ARMAND DUQUETTE, PETITIONER,

*vs.*

GLADYS HOBBS MERRILL.

York.   Opinion, April 11, 1945.

*Louis B. Lausier,*

*William P. Donahue,* for the petitioner.

*Titcomb & Siddall,* for the respondent.

SITTING: STURGIS, C. J., THAXTER, HUDSON, MANSER, MURCHIE, CHAPMAN, JJ.

MANSER, J. The petitioner claims to have been elected as County Treasurer of York County at the biennial state election held September 11, 1944. The present proceedings were brought under the provisions of R. S., 1944, c. 5, §§85-89 inclusive, against the defendant who is holding, and claims to be entitled to hold, the office of County Treasurer. The

petition was denied by the Presiding Justice of the Superior Court and comes forward on appeal. The facts are not in controversy.

Maynard A. Hobbs was duly elected County Treasurer to serve for the term of four years from January 1, 1945. He died on July 24, 1944. The vacancy in the office was filled in accordance with the statute by an appointment made by the Governor with the advice and consent of the Council. The specific provision of law with reference to a vacancy in the office of County Treasurer is found in R. S., 1944, c. 79, §142, and provides:

> "If a person so chosen declines to accept or a vacancy occurs, the governor, with the advice and consent of the council, may appoint a suitable resident of the county, who, having accepted the trust, given bond, and been sworn, shall be treasurer until the 1st day of January following the next biennial election, at which said election a treasurer shall be chosen for the remainder of the term, if any; but in any event he shall hold office until another is chosen and qualified."

The next or following biennial election was held on September 11, 1944. The state-wide primary election had been held in June, 1944. There was no nomination at that time for the office of County Treasurer because the term of the incumbent did not expire until January 1, 1947. The official ballot for the general election in September was in print at the time of the death of Mr. Hobbs. The only regular method provided for placing the names of candidates for office upon the official ballot to be used at the general election is by means of the primary election held in June, at which time each of the political parties select by ballot their choice of candidates. The law, however, further provides that, in case of vacancy in any office which is to be filled at the next bien-

nial state election, for which no nomination has been made at the primary election, a special primary election shall be ordered by proclamation of the Governor. R. S., 1944, c. 4, §47. If the time is insufficient therefor, said nomination may be supplied in the manner provided in R. S., 1944, c. 4, §§45, 46, 51. No special primary election was ordered by the Governor and it may be assumed that it was not deemed practicable or there was insufficient time therefor.

The alternative provisions just above cited for providing a candidate to fill the vacancy, are by political parties, by convention of delegates, or appropriate caucus, or if the time is insufficient therefor, by regularly elected political committees. No political party, convention or committee nominated any candidate for the office. Consequently, there was no change made in the official ballot and no provision made therein for the selection of a County Treasurer to fill the vacancy for the unexpired term. The name of the office did not appear on the ballot.

The petitioner, however, claims to have been regularly elected County Treasurer by reason of the fact that in the City of Biddeford 1309 voters either wrote in the title of the office and his name thereunder, or used a "sticker" of the same import and voted for him.

Biddeford is the largest city in York County. The County, however, comprises two cities and twenty-six towns. At the election there were approximately 22,000 ballots cast, but none included the name of the petitioner except in Biddeford.

The contention of the petitioner is that the law distinctly provides for an election to fill the vacancy in the office of County Treasurer at the succeeding general election; that the failure of the Governor or of the various political organizations to set in motion proper machinery to provide political candidates, did not nullify the right, duty and responsibility of the voters to cast their ballots for their choice of a

candidate to fill the office. It was further contended that the omission by the Governor and the election authorities to act in accordance with the provisions of the statute, was without effect because of the claim that such provisions were directory and not mandatory.

In this connection, there is to be noted that the legislature apparently provided for contingencies which would bring about a failure to elect a successor to the office of County Treasurer. The provision for filling the vacancy concludes with this clause:

"but in any event he shall hold office until another is chosen and qualified."

Although it was a general election that was held September 11, 1944, yet, assuming a vacancy in the office of County Treasurer, and the right and duty of the electorate to fill that vacancy at the time of the general election, yet as to such office it was a special election, as there would be no one to be elected except for the vacancy and by the provisions of the statute the election would not be for the regular term of four years but for the unexpired term of two years. That such election is held at the same time and place with the general election, does not change its character.

Although there is not unanimity of judicial opinion as to the requirement of official notice, if the vacancy is to be filled at the time of a general election, yet it appears to be almost universally held that if the great body of the electors are misled by the want of such notice and are instead led to believe that no such election is in fact to be held, an attempted choice by a small percentage of the voters is void. *Wilson* v. *Brown*, 109 Ky., 229, 139 Ky., 397, 58 S. W., 595; *Wooton* v. *Wheeler*, 149 Ky., 62, 147 S. W., 914; *Secord* v. *Foutch*, 44 Mich., 89, 6 N. W., 110; *Bolton* v. *Good*, 41 N. J. L., 296; *Fos-*

*ter* v. *Scarff*, 15 Ohio St., 532; *State* v. *Hay*, 71 Wash., 699, 128 P., 1058; *State* v. *Holm* (202 Minn. 500), 279 N. W., 218. See also 33 Ann. Cas. 1914 C., 597, 18 Am. Jur., Elections, §107; 29 C. J. S. Elections, §72.

Notice to the electors that a vacancy exists and that an election is to be held to fill it for the unexpired term, is essential to give validity to the meeting of an electoral body to discharge that particular duty, and is also an essential characteristic and element of a popular election. Public policy requires that it should be given in such form as to reach the body of the electorate. Here there had been no nominations to fill the vacancy, either by the holding of a special primary election, or by nomination by county political conventions or party committees. The designation of the office to be filled was not upon the official ballot. As before noted, except for the vacancy, it would have no place there, as the term of office of the incumbent, if living, would not expire until January 1, 1947. The only notice which might be assumed by the voters to have any official import was the report in certain newspapers of limited circulation in York County, that the Attorney General gave as his opinion that "the words 'to fill a vacancy' must of necessity apply to an actual vacancy in an office. In York County there is no vacancy since the governor has filled the office." The petitioner claims that these newspaper notices called the attention of the voters to the fact that a vacancy existed and they must be presumed to know the law and of their duty in the premises, notwithstanding the alleged erroneous opinion of the Attorney General. To say that the voters received notice that they were to fill a vacancy by reason of the fact that the Attorney General said such vacancy did not exist, would appear to be far-fetched.

In *State* v. *McKinney*, 25 Wis., 416, it was shown that a vacancy was not generally known, as votes for the office

were cast in only 5 out of 41 election districts in the county, and it was held that the lack of any notice, either actual or official, invalidated the election. The Court said that when

> "the great body of electors cast their votes in utter ignorance of the fact that a district attorney was to be chosen at that election, to hold that the very inconsiderable number of votes cast constituted a valid election for the office of district attorney, would be going further than any adjudicated case to which we have been referred has yet gone; and further, we think, than the law or public policy will allow."

And again, as said in *Foster* v. *Scarff*, supra:

> "No man has the right to filch an office through the method of a surprise upon the great body of the electors."

The entry will be

*Appeal dismissed.*
*Decree below affirmed.*