This is an action claiming a declaratory judgment determining whether or not the zoning ordinance of the borough of Naugatuck, passed *Page 79 
and adopted on July 14, 1955, is "legally operative and valid." A request for certain injunctive relief was subsequently removed from consideration by stipulation of counsel.
The cause, heard by this court on March 7, 1958, and in which briefs were filed on March 14, 1958, was brought on October 23, 1956, against the borough of Naugatuck, the board of mayor and burgesses, the zoning board of appeals, and a former building inspector now deceased. The plaintiff is one aggrieved by the action of the latter board, the legal existence of which is associated with the validity of the zoning ordinance of the defendant borough, the enactment of which is here questioned.
Since counsel have agreed that the question proposed is original, that the complainant is a party in danger of loss of property rights and that there is a substantial uncertainty of the legal relations between the parties which requires settlement, and since all persons having an interest in the subject matter of the complaint, including residents, taxpayers, property owners and the general public of the defendant borough, have had reasonable notice of the pendency hereof, this court acts in the instant cause. Practice Book § 277; General Statutes, Cum. Sup. 1955, § 3116d; Order of Notice, Return, Affidavit of Publication (File Item 9).
The matter was submitted to this court on a stipulated statement of facts and an amendment thereto. Made part thereof were statements of authorized officials of newspapers as to the custom and usage in their business with particular reference to acceptance and treatment of notices required by statute to be published. See File Items 12 13. Also made part of the stipulations are copies of the zoning ordinance and the charter of the defendant borough. See File Items 14 15. *Page 80 
Contained in the stipulated facts are the following: At a session duly called and held on July 14, 1955, the predecessor board of the defendant board of mayor and burgesses adopted the zoning ordinance as stipulated (file item 14), declaring the effective date therefor to be July 19, 1955. No vote was ever taken and recorded by that body or its predecessors adopting the provisions of the statutory enabling act, "Municipal Zoning and Planning," General Statutes, chapter 43, as amended in 1953. Action by the defendant board of mayor and burgesses occurred under chapter 43 as if this enabling act had been properly adopted. Similarly, a review of the minutes of all meetings of the defendant board of mayor and burgesses and its predecessors reveals no vote of appointment of that group as the zoning commission in spite of the fact that it acted in the latter capacity. Officially, none of the defendants caused or requested publication of any notice to be placed in any newspapers concerning the public hearing on the proposed zoning ordinance so adopted on July 14, 1955. None of these defendants have knowledge of the actual composition of the mention in news stories of the hearing of January 25, 1955. These stories, it is agreed, contained some references to a public hearing on that date in the Naugatuck town hall and were carried on various pages in the "Waterbury Republican" in its issues of January 10, 11, 15 and 22, 1955, and in the "Naugatuck Daily News" in its issues of January 10, 15 and 22, 1955. There was never a paid advertisement inserted in these newspapers, nor was there a return made attesting to the exactness, accuracy or propriety of any notice in connection with the hearing. No publishing of the proposed zoning ordinance occurred prior to the public hearing. The transcript of the hearing of January 25, 1955, disclosed the announcement that further public hearings in connection with *Page 81 
the subject matter would be held, but the minutes thereof are nowhere recorded, and there is no evidence that these meetings took place.
In this action, no claim is made that the authors or legislators of the zoning ordinance of the defendant borough either sponsored, proposed or adopted that which in content is impracticable, unreasonable or arbitrary. However, the plaintiff states that the asserted invalidity of the zoning ordinance is associated with the claimed impropriety of the procedural and jurisdictional phrases of its so-called adoption. The plaintiff's claims, applicable to these stipulated facts, may be stated as follows: (1) The defendant borough, specifically and formally, failed both to adopt the available statutory enabling legislation and to appoint an official zoning commission, which resulted in an inability to pass a zoning ordinance. (2) A proper legal notice of the public hearing was never given, and, therefore, a jurisdictional defect was created resulting in the invalidity of this hearing.
Only parenthetically is it here stated that the issue testing the legality of the zoning ordinance of the defendant borough, as adopted on July 14, 1955, was raised, inter alia, in a recent action before this court. Nixon v. Gniazdowski, Court of Common Pleas, Jud. Dist. of Waterbury, No. 14825 (Swain, J.,
Feb. 25, 1957), aff'd, 145 Conn. 46. There was no need, in that particular cause, to dwell at length on other than the determinative issue of nuisance. However, it was of at least portentous significance that the trial judge in that action included in his opinion the following: "The defendant claims that the zoning regulations are invalid. He introduced evidence in support of his claim. In view of the court's conclusions in this action, it is not necessary to pass on the question of the validity of the regulations. It appears from the evidence that there is a *Page 82 
very serious question as to their validity. They were adopted in 1955, and it would seem wise if the Borough gave serious considerations to the question of the validity of the regulations before things become involved." A-360 Rec. Briefs 241.
Zoning may be defined as "a general plan to control and direct the use and development of property in a municipality . . . by dividing it into districts according to the present and potential use of the properties." State ex rel. Spiros v. Payne, 131 Conn. 647,652; Bettman, "Constitutionality of Zoning," 37 Harvard L. Rev. 834; Maltbie, "The Legal Background of Zoning, 22 Conn. B.J. 2, 5. The justification for zoning in a municipality is that it serves to promote public health, safety, welfare and the prosperity of the community. Devaney v. Board of ZoningAppeals, 132 Conn. 537, 539. The legal basis of zoning, therefore, is police power, inhering as it does in every sovereignty. It is within the domain of the legislature to announce how and when this force should be brought into use for the protection or advancement of the public good.
Towns, cities and boroughs have no inherent police power. 8 McQuillin, Municipal Corporations (3d Ed.) §§ 25.34, 25.35; 1 Yokley, Zoning Law 
Practice (2d Ed.) § 18, n. 9; Florentine v. Darien,142 Conn. 415, 422; Strain v. Mims, 123 Conn. 275,285. Authority to originate zoning is not absolute in a municipality. Similarly, when established, it is not without limits. Miller v. Town Planning Commission,142 Conn. 265, 268. The prerequisite to any effective municipal zoning action is legislation by the state delegating such power. Other methods exist to effect this end, such as constitutional provisions, charter amendments and special acts. 8 McQuillin, op. cit., § 25.37. However, zoning in a given area usually is originated by benefit of our enabling legislation. General Statutes, c. 43, as *Page 83 
amended, Cum. Sup. 1953, §§ 280c et seq. By these statutes the granting of this power to a town, city or borough carries its own circumstances and limitations.
This court is mindful that there exist in our law presumptions in favor of the validity of municipal zoning ordinances. Strain v. Mims, supra; Murphy,Inc. v. Westport, 131 Conn. 292; Hills v. ZoningCommission, 139 Conn. 603, 608. As it has been observed, the enactment of the zoning regulations with which we are here concerned finds its authority in police power, and because the latter is delegated by the state of Connecticut, it is axiomatic that the defendant borough should have literally complied in the adoption and enactment of zoning with the provisions of the statutes which delegated that power, the so-called enabling legislation. General Statutes, c. 43, as amended, Cum. Sup. 1953, §§ 280c et seq.;Alderman v. West Haven, 124 Conn. 391, 397; Jack
v. Torrant, 136 Conn. 414, 419; 1 Yokley, Municipal Corporations, pp. 435, 436.
A pertinent provision of § 280c follows: "Any municipality may, by vote of its legislative body, as defined in section 391c, adopt the provisions of this chapter and exercise through a zoning commission the powers granted hereunder." Section 391c defines "legislative body" in a borough to be the board of burgesses.
It must be considered that the clerk of the defendant borough has always had the duty of recording and keeping records of votes and proceedings of the defendant board of mayor and burgesses and its predecessors. It is further provided in the borough's charter that such records are competent evidence. See "An Act Establishing the Borough of Naugatuck," 11 Spec. Laws 190, § 12 (Jan., 1893). There is no evidence that this duty of this office was *Page 84 
not properly performed. As previously stated, a complete review of all meetings of the board of mayor and burgesses shows that there never was a vote taken and recorded by that legislative body adopting the enabling act. Not only does the inference arise that there never was such a vote, but, in addition thereto, the defendants' brief acknowledges that no such vote was either taken or recorded.
Before a comprehensive zoning ordinance was passed, there should have been a zoning commission established, which, in turn, could not have come into being until, as is made mandatory by our statutes, supra, the adoption of the enabling act had occurred. These factors must always be demonstrated in any program of municipal zoning. Concerning these elements, 1 Yokley, Zoning Law Practice, (2d Ed.) § 19, declares: "They constitute cardinal requisites. When they are present, the zoning ordinance is safe from attack in the courts — it may be vulnerable in some small detail of applicability to a particular use or location — but the main point, the right to zone the city or village in comprehensive manner, is beyond question."
As has been stated, it was stipulated that, though there is no record that the enabling act was adopted, the defendant board of mayor and burgesses acted "as if it had been adopted." Nowhere has precedent been found which might establish such unauthorized conduct as being curatively effective upon the fundamental fault. We are not concerned here with a defective adoption of the enabling act; we are faced, rather, with no adoption at all. Further, no city, town or borough is compelled to adopt zoning. The enabling act of our state is permissive only. Once the municipal legislative body decides upon zoning, it must minutely adhere to the procedure of our statutes. Otherwise, its ordinance is nullified. Bassett, Zoning, p. 31. *Page 85 
Prior to the adoption of the zoning ordinance on July 14, 1955, no public hearing was held in connection with zoning other than the meeting of January 25, 1955. No official request was made that notice of this hearing be published in any newspaper. None of these defendants know of the content of the news stories appearing on various pages and dates of the "Waterbury Republican" and the "Naugatuck Daily News." There were no paid advertisements inserted in either of the newspapers. No return was made demonstrating either the nature, propriety or accuracy of any pertinent news disseminated, or the printing of the zoning regulations, in any newspaper, prior to the hearing.
The pertinent portion of the statute relative to this matter of notice of hearings, § 282c of the 1953 Cumulative Supplement, follows: "Notice of the time and place of such hearing shall be published in a newspaper having a substantial circulation in such municipality at least twice at intervals of not less than two days, the first not more than fifteen days, nor less than ten days, and the last not less than two days before such hearing, and a copy of such proposed regulation or boundary shall be filed in the office of the town, city or borough clerk, as the case may be, in such municipality for public inspection at least ten days before such hearing, and may be published in full in such paper."
This court cannot agree with the contention of the defendants' counsel as stated in his brief that there was here given the required notice. Webster defines publication as "the act of publishing, or state of being published." Webster's New International Dictionary (2d Ed.). To publish is "to make public announcement of" or to announce formally and officially. The true purpose of publication is to give notification to those who may be affected by the monition. Publication in a newspaper of suitable *Page 86 
circulation in the area, the residents of which it is desired to be apprised of a given event, is the most commonly authorized form of notice other than that of actual communication. Where the use of this method is sanctioned, it is considered to be effective notice whether or not it is observed by those for whom such information is intended. Temperly v.Indianapolis, 189 Ind. 292; Drabinski v. AuditorGeneral, 296 Mich. 463.
Though there is no statutory mandate as to who should cause publication to be made, the reasonable intendment is clear that this is a burden of those holding the meeting or the clerk of that body. Notice by a mere volunteer or a mere stranger is ineffective.Bausman v. Kelley, 38 Minn. 197. The act of giving notice to those whose property rights might be affected is much too important to be done informally or unofficially, to be relegated to chance, or to be omitted as if it were a tedious chore and futile gesture. Even though actual and absolute notice or communication is not required, the notification should be such as to attract attention, disclose its character to the person affected, and be identified as what it is, namely, notification. 1 Merrill, Notice, § 502, n.n. 33 34. This absolute need for identification as a notice denies the effect as notification to casual conversation, informal letters or as, here, statements in the reader portion or news stories of the press. Duquette v. Merrill, 141 Me. 232, 234;People v. San Buenaventura, 213 Cal. 637, 638;Askew v. Silman, 95 Ga. 678, 680.
The constructive notice such as is provided for by publication comes into being here by statute law. Cum. Sup. 1953, § 282c. Not only is this substitute for actual notice provided for therein but also there is in our statutes definitely prescribed the place of publication and, in some degree, the nature of the newspapers which may be used to carry such publications. *Page 87 
General Statutes, § 8890. Thus, it may be seen that such notice is legal notice. An essential element of a publication or legal notice is that it appears on its face to be caused to be given or published by competent authority. 39 Am. Jur. 237, § 9. It is of compelling significance that newspapers, although possessed of great force in reaching the public, here make no claim for the sufficiency of their reader copy to constitute legal notice. On the contrary, the statements of the publishers as stipulated into evidence and agreed to be "authenticated and undisputed," constitute convincing proof of the fact that usage, custom and propriety of the business of publishing preclude as either an effective, proper or accepted method the designed or accidental use of news columns as a suitable or sufficient vehicle for publication and notification as was here required. Normally, the purchaser of space in a newspaper maintains control of the copy used in that space. On the other hand, the domination and command of that which is set out in news columns are retained by reporters or other members of the writing staff of a newspaper.
The "Amendment to Stipulation" recites, in effect, that one of the defendant boards, since its origin, has, whenever occasion arose, inserted two paid notices in the "Naugatuck Daily News," said notices being identified as legal notices by the clerk of the board, setting forth the time and place of public hearings. Such a newspaper insertion is the usual, official, identified, complete and proper legal notice constituting publication and warning within the purport of § 282c. No attempt has been made to justify the departure from this usual method in the matter of the notice with which we are concerned.
There was a failure, here, to give adequate and proper notice of the public hearing. This constitutes a jurisdictional defect. Hutchison v. Board of Zoning *Page 88 Appeals, 138 Conn. 247, 251; Smith v. F. W.Woolworth Co., 142 Conn. 88, 94; Slagle v. ZoningBoard of Appeals, 144 Conn. 690, 693. A jurisdictional defect is fatal. The notice not having been given as required by the statute, the hearing on January 25, 1955, was not a legal hearing and had no more effect in law than a fortuitous gathering of people. Alderman v. West Haven, 124 Conn. 391,397; 1 Yokley, Municipal Corporations, p. 437.
In the opinion of this court, further comment, now, on additional claims made would serve no useful purpose. It is concluded that the plaintiff has sustained his burden of proof, as is required of him, that this zoning ordinance of the defendant borough is invalid.
The parties are advised that the zoning ordinance of the defendant borough passed and adopted on July 14, 1955, and effective July 19, 1955, is neither legally operative nor valid.
 Judgment may enter accordingly, without costs taxed to either party.