WILLIAM E. SIMMONS ET AL. *v.* ZONING COMMISSION OF THE BOROUGH OF NAUGATUCK ET AL.

SUPERIOR COURT JUDICIAL DISTRICT OF FILE No. CV 790048417
WATERBURY

Memorandum filed June 15, 1979

*Edward G. Fitzpatrick,* for the plaintiffs.

*Peter Rotatori, Jr.,* for the named defendant.

*Henry S. Marlor,* for the defendants Ralph and Susan Bavier.

*Donald A. House,* for the defendant Henry A. Kogut.

WALL, J. The plaintiffs appealed to the Superior Court for the judicial district of Waterbury from an unfavorable decision of the zoning commission of the borough of Naugatuck granting the defendants a change in zoning from I-2 (industrial) to R-15 (residential, 15,000 square feet minimum). This appeal is taken pursuant to § 8-8 of the General Statutes which states: "Any person or persons severally or jointly aggrieved by any decision of said board, or any person owning land which abuts or is within a radius of one hundred feet of any portion of the land involved in any decision of said board . . . may, within fifteen days from the date when notice of such decision was published in a newspaper pursuant to the provisions of section 8-3 or 8-7, as the case may be, take an appeal to the superior court for the judicial district in which such municipality is located, which appeal shall be made returnable to said court in the same manner as that prescribed for civil actions brought to said court. . . ."

The subject property is a parcel approximately thirty-two acres in size located on the south side of Rubber Avenue Extension in the borough of Naugatuck. The property is located approximately 325 feet from the boundary of the town of Middlebury on Rubber Avenue. The parcel was originally zoned I-2 and is surrounded exclusively by property which is also zoned I-2. The plaintiffs are aggrieved property owners owning property located within a radius of 100 feet of the subject property.

On November 30, 1978, Ralph and Susan Bavier, owners of the subject property, petitioned the Naugatuck zoning commission for a zone change for that parcel from I-2 to R-15. The Baviers had previously entered into a contract to sell the property to the defendant Henry A. Kogut, a local real estate developer, who plans to construct residential homes on a series of lots of 15,000 square feet to be carved out of the Baviers' property.

The Naugatuck planning commission unanimously disapproved the proposed zone change in a letter to the zoning commission dated January 9, 1979. The zoning commission held a public hearing on the proposed zone change on January 23, 1979, and, notwithstanding the unfavorable planning commission report, granted the zone change to R-15 at its March 13, 1979 meeting. It is an undisputed and stipulated fact that the defendant zoning commission failed to notify the central Naugatuck valley regional planning agency of the proposed zone change. Consequently, the regional agency was not represented at either the January 23 or the March 13 meetings, and a report on the regional ramifications of the change was not prepared by them. Although the plaintiffs opposed a change to R-15, they would not have been opposed to an R-30 classification, and failing that, a return to I-2.

After the proposed zone change was adopted, the plaintiffs brought this action in a complaint dated April 5, 1979. They claimed that the zoning commission's action violated § 8-3a of the General Statutes in that a two-thirds vote of the zoning commission was required in view of the unfavorable planning commission report and that the commission thus lacked jurisdiction to approve the zone change. The plaintiffs did not pursue that contention. Second, the plaintiffs claimed that the commission's action amounted to "spot zoning." Third, it was alleged that the commission violated § 8-2 of the General Statutes in that the change was not in conformance with the guidelines set forth in that statute. Finally, the plaintiffs contended that the zoning commission acted arbitrarily and abused its discretion in approving the change in light of the planning commission's unfavorable report.

The plaintiffs, in their prayer for relief, asked for a temporary and permanent restraining order and/or injunction against the zoning commission to prevent the implementation of the zone change. They also requested that the commission's decision be modified to rezone the property as R-30, and they filed the appropriate appeal bond in the amount of $250. A temporary injunction was issued on April 5, 1979.

Henry A. Kogut who, as explained above, had contracted with the Baviers to purchase the property in question was not originally included as a defendant. Accordingly, on April 19, 1979, he moved to be made a party defendant to the action, and on April 23, 1979, he was joined as a party along with additional plaintiffs. The amended complaint also alleged that the commission's approval of the zone change violated the plaintiffs' rights to due process and equal protection of the law.

Finally, on April 30, 1979, the plaintiffs again amended their complaint alleging, inter alia, that the zoning commission violated § 8-3b of the General Statutes in that a portion of the property was located within 500 feet of another municipality. This allegation was verified by acting borough engineer Ronald Mormile in an affidavit dated May 17, 1979, which stated that the subject property was approximately 325 feet from the Middlebury town line. Additionally, the plaintiffs alleged that the defendant zoning commission failed to give notice of the proposed zone change to the regional planning agency. As a result, that agency had no opportunity by its agents, officers or employees to appear at the public hearing where the Baviers' petition was aired. At the appeal hearing held at the Superior Court on May 29, 1979, the parties stipulated that both Middlebury and Naugatuck were members of the central Naugatuck valley regional planning agency.

Since this action is appellate in nature the court may, in its discretion, decide the case based solely on the record before it. Accordingly, during the May 29, 1979 hearing before this court, the plaintiffs' motion of April 30, 1979, to hear additional evidence under § 8-8 was denied. Thus the record and stipulations before this court will constitute the source of all facts upon which a decision in this case will be reached.

Although the plaintiffs set forth in their complaint, as amended, several bases for overturning the March 13, 1979 decision of the zoning commission, this appeal will turn on the resolution of one issue. That issue is whether the § 8-3b requirement that notice be given to the regional planning agency that a zoning commission is entertaining a petition to rezone a given parcel of land lying within 500 feet of another municipality is mandatory or merely directory in nature.

The following facts are not in dispute. The Naugatuck zoning commission had before it a petition by the Baviers to rezone a particular parcel of land. This parcel was approximately 325 feet from the Middlebury town line. A public hearing was held on the proposal. The zoning commission failed to notify the central Naugatuck valley regional planning agency of the proposal or hearing. The proposed change was adopted at a subsequent meeting. In addition, it was stipulated that both Naugatuck and Middlebury were members of this particular regional planning agency.

The pertinent part of § 8-3b states: "When the zoning commission of any municipality proposes to establish or change a zone or any regulation affecting the use of a zone any portion of which is within five hundred feet of the boundary of another municipality located within the area of operation of a regional planning agency, the zoning commission *shall* give written notice of its proposal to such regional planning agency not later than thirty-five days before the public hearing to be held in relation thereto." (Emphasis added.)

The defendants' contention is that, since § 8-3b is written in the affirmative and does not contain any negative terminology with regard to a possible sanction for noncompliance, it is merely directory, not mandatory in nature. They rely on *Nielsen* v. *Board of Appeals on Zoning,* 129 Conn. 285. In *Nielsen,* supra, the zoning board of appeals granted an application to vary a 1500 foot zoning restriction concerning liquor permits in favor of the applicants. In its vote the board did not set forth the reason for granting the application in accordance with the statute requiring that whenever such board shall change a zoning regulation, *"it shall state upon its records the reason why such change is made."* General Statutes, 1939 Sup., § 132e. (Emphasis added.)

In holding that the failure to comply with the statute did not invalidate the action of the board, the Connecticut Supreme Court commented: "The statutory provision is couched in affirmative terms and not negative. It prescribes what shall be done by the board but it does not in terms make invalid their action upon failure to comply with the statute. While it is the duty of boards of appeal to comply with the statute, it is true 'that neither negative nor prohibitive language appears in the Act, and that there is nothing contained in it which is naturally expressive of an intention to make compliance a condition precedent to action, or to thereby create a limitation of power.' [Citation omitted.] Failure to comply with the statute did not invalidate the action of the board." *Nielsen* v. *Board of Appeals on Zoning,* supra, 287.

Although the language of the statute appears unequivocal, later cases have had the effect of impliedly overruling *Nielsen.* For example, in *Gross* v. *Planning & Zoning Board of Appeals,* 171 Conn. 326, the plaintiffs appealed to the Connecticut Supreme Court from a dismissal by the Court of Common Pleas of the plaintiffs' appeal from the action of the defendant planning and zoning board of appeals in granting the application of the defendants for a variance of setback requirements and a special exception to permit the construction and operation of a home for the aged in a residential zone. In *Gross,* the plaintiffs contended, inter alia, that the board acted arbitrarily in failing to make a written finding with respect to the granting of the variance as required by the Greenwich zoning regulations which state in § 28a (3) that "[b]efore any variance is granted, the Board must make a written finding in its minutes as part of the record in the case: (a) that special circumstances, described in detail, attach to the property which do not generally

apply to other property in the neighborhood and constitute the hardship . . . ." Id., 327. In holding that the defendant violated the Greenwich zoning regulations by failing to make the required finding, the court stated: "It is difficult to conceive of more unequivocal language than that contained in § 28a (3) in setting forth a prerequisite of written findings before a variance can be granted . . . In granting the variance the board ignored the requirements of the Greenwich zoning regulations, and the variance, therefore, was not properly granted." *Gross* v. *Planning & Zoning Board of Appeals,* supra, 327–28. See also *A.P. & W. Holding Corporation* v. *Planning & Zoning Board,* 167 Conn. 182, 186; *Hahn* v. *Zoning Commission,* 162 Conn. 210, 211; *Carlson* v. *Zoning Board of Appeals,* 158 Conn. 86, 90; *Gregorio* v. *Zoning Board of Appeals,* 155 Conn. 422, 428–29.

The language of the local zoning ordinance in *Gross,* pertaining to the requirement of a written finding, was set in less compelling terms than the comparable wording in *Nielsen.* Yet the Supreme Court, notwithstanding *Nielsen,* found the statutory requirement in *Gross* to be mandatory, not directory.

Having found the defendants' reliance on *Nielsen* to be misplaced in light of later cases, the court now moves to an analysis of the language of the statute which is the subject of this appeal. Section 8-3b states directly and clearly that a municipality *"shall* give written notice of its proposal to such regional planning agency . . . ." (Emphasis added.) The word "shall" connotes that the performance of this obligation is mandatory, as opposed to permissive. *Akin* v. *Norwalk,* 163 Conn. 68, 74. The test is whether the prescribed mode of action is of the essence of the thing to be accomplished or, in other words, whether it relates to matter, material or immaterial, of convenience or of substance. In deter-

mining whether a provision is of the essence of the thing to be accomplished, significance is to be attached to the nature of the act, the language, and the form in which the provision is couched. Id., 72–73; see *Jones* v. *Civil Service Commission,* 175 Conn. 504, 509; IA Sutherland, Statutory Construction (4th Ed.) § 25.03.

Help in best determining the intent of the legislature when it enacted § 8-3b can be found in the legislative history of that statute. The statute was originally introduced as Public Act No. 61-546, substitute for House Bill No. 2521, during the January, 1961 session of the General Assembly. The original bill's statement of purpose was "[t]o provide for study and report by regional planning agencies on *proposed* zoning changes within five hundred feet of municipal boundaries." (Emphasis added.) (Bill No. 2521, p. 1, January 1961 Session, General Assembly.) Thus the obvious purpose of § 8-3b is to give notice to the appropriate regional planning agency and to allow it the opportunity of advising the commission of its attitudes and the probable effect on the neighboring town as well as on the regional plan of development. It emphasizes a legislative determination that cooperation between the regional agency and the local commission will be of benefit to both. *Ferndale Dairy, Inc.* v. *Zoning Commission,* 148 Conn. 172, 177.

On March 22, 1961, a public hearing was held by the committee on state development during which House Bill No. 2521 was discussed. Representative Wallace of Simsbury, who introduced the original bill in the house, remarked: "HB-2521 merely defines that wherever any proposed change of zone is going to take place within 500 feet of a town's border *that before such action is initiated by the Local Zoning Board that this information is passed along to the Regional Planning Agency which these*

*towns are part of. . . .* [I]t permits the Regional Planning Agency to look at the proposed change as it effects the entire complex of the town of which this is a part of and then make its report back to the community. . . . I would think that the local communities would be appreciative of this because this is a broader look at the whole problem." (Emphasis added.)  Transcript of public hearing of the state development committee, March 22, 1961, p. 165.

During the house proceedings concerning House Bill No. 2521 held on May 2, 1961, the following colloquy took place:

"MR. DREYFAUS OF WESTPORT:  The purpose of this bill is to establish a mechanism whereby Regional Planning Agencies can provide a report on a proposed establishment of a commercial or industrial zone within 500 feet of the boundary of a municipality or of the change therein. . . .

THE SPEAKER:  Will you remark further?  The gentleman from Glastonbury.

MR. SCOVILLE OF GLASTONBURY:  Mr. Speaker, through you I would like to ask the gentleman who just reported out that bill, if this procedure is necessary. It would seem now that member towns of a Regional Planning Agency have the services of that agency available and in the event of a zone change, the zoning authority of the community would be able to go to the Capitol Regional Planning Agency, for example, if it were in this area, and seek their advice and consult with them on the problem.

THE SPEAKER:  Would the gentleman from Westport care to answer the gentleman from Glastonbury?

MR. DREYFAUS OF WESTPORT:  I think the answer is that they can do this, *but this requires them to do it.* [Emphasis added.]

MR. SCOVILLE OF GLASTONBURY: *Right.* [Emphasis added.]" 9 H.R. Proc., Pt. 3, 1961 Sess., pp. 3174–75.

The fact that the notice requirement of § 8-3b was intended to be mandatory and not permissive is further buttressed by the senate proceedings of Tuesday, June 6, 1961, where Senator Marcus commented: "This bill would *require* that a proposed zoning change within 500 feet of the boundary of another municipality be submitted to a Regional Planning Agency." (Emphasis added.) 9 S. Proc., Pt. 9, 1961 Sess., p. 3170.

Thus it appears both from the language and legislative history of § 8-3b that the notice requirement is mandatory. In addition, it appears that failure to comply with that notice requirement creates a defect in the board's jurisdiction over the zoning petition, rendering any action taken by the board in relation to the proposal null, void and without effect. *Smith* v. *F. W. Woolworth Co.,* 142 Conn. 88, 94; *Hutchison* v. *Board of Zoning Appeals,* 138 Conn. 247, 251. "For the board to have taken any action which can be held valid . . . compliance with the provision for notice must be had. *Lordship Park Assn.* v. *Board of Zoning Appeals,* 137 Conn. 84, 90 . . . . The fundamental reason for the requirement of notice is to advise all affected parties of their opportunity to be heard and to be apprised of the relief sought. *Winslow* v. *Zoning Board,* 143 Conn. 381, 389 . . . ." *Slagle* v. *Zoning Board of Appeals,* 144 Conn. 690, 693. See also *Jarvis Acres, Inc.* v. *Zoning Commission,* 163 Conn. 41, 44, where the court stated that "[t]he law is clear that failure to give proper notice of a hearing constitutes a jurisdictional defect, results in a lack of due process, and renders the action of the commission granting the zone change null and void." See generally, 8A McQuillin, Municipal Corporations

(3d Ed. Rev.) § 25.249, pp. 188–190; *Gendron* v. *Naugatuck,* 21 Conn. Sup. 78, 87–88. In *Hutchison,* supra, 251, the Supreme Court stated that "[f]ailure to comply with any of the required steps constitutes a jurisdictional defect. . . . The underlying purpose of such requirements is 'not to permit changes, exceptions or relaxations [in zoning regulations] except after such full notice as shall enable *all* those interested to know what is projected and to have opportunity to protest, and as shall insure fair presentation and consideration of all aspects of the proposed modification. . . .' " (Emphasis added.)

In view of all of the factors enumerated herein, it is held that the failure of the Naugatuck zoning commission to notify the central Naugatuck valley regional planning agency of the proposed zone change of the Bavier property created a defect in the commission's jurisdiction over the matter, rendering the zone change ineffectual.

Section 8-8 of the General Statutes states: "Costs shall be allowed against said board if the decision appealed from is reversed, affirmed in part, modified or revised."

Accordingly, it is ordered that: (1) Judgment may be entered sustaining the appeal and vacating the decision of the zoning commission of March 13, 1979, which rezoned the Bavier property from I-2 to R-15. (2) Costs shall be allowed against the Naugatuck zoning commission in favor of the named plaintiffs.