[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs, Richard D. Lauer and Janice Pomazi, appeal pursuant to General Statutes, Sec. 8-8(b) from the decision of the defendant, Redding Zoning Commission ("Commission"), granting the application of the defendants, Luciano Angeloni and Debra Angeloni, for amendments to their special permit and revised land management plan to operate a horse farm. The Commission acted pursuant to General Statutes, Sec. 8-3c.
PROCEDURAL HISTORY
On January 30, 1992, the Commission published its final decision on the plaintiffs' application in the Redding Pilot.
(ROR, 1-8: Memo from the Commission to the Redding Pilot
requesting publication.) Pursuant to General Statutes, Sec.8-8(e) on February 13, 1992, the plaintiffs served the Commission by causing a true and attested copy of the writ, summons, complaint, citation and bond to be left at the usual place of abode of Frank Taylor, Chairman, Redding Zoning Commission. (Sheriff's Return.) Pursuant to General Statutes, Sec. 8-8(e) on February 13, 1992, the plaintiffs served the Town of Redding by causing a true and attested copy of the writ, summons, complaint, citation and bond to be left in the hands of Patricia Creigh, Town Clerk of the Town of Redding. (Sheriff's Return.) Pursuant to General Statutes, Sec. 8-8(f) on February 13, 1992, the plaintiffs served both Debra Angeloni in hand and Luciano Angeloni at his usual place of abode with their own true and attested copies of the writ, summons, complaint, citation and bond. (Sheriff's Return.) Pursuant to General Statutes, Sec. 8-8(h), the plaintiffs secured a bond dated February 13, 1992.
On February 14, 1992, the plaintiffs filed their appeal with the clerk of the Superior Court.[1] The plaintiffs have alleged aggrievement. On August 6, 1992, the plaintiffs filed a revised appeal. On August 19, 1992, the defendant Commission filed an answer to the revised appeal. On September 2, 1992, the defendants, Luciano and Debra Angeloni, filed an answer to the revised appeal.
On October 5, 1992, the plaintiffs filed a brief. On October 23, 1992, the defendants, Luciano and Debra Angeloni, filed a brief. On November 5, 1992, the defendant Commission filed a CT Page 3343 brief. On May 20, 1993, a hearing was held before the court, McGrath, J.
On June 10, 1993, the plaintiffs filed a supplemental brief alleging improper notice of the Commission's hearing on the Angelonis' proposal. On June 21, 1993, the defendant Commission filed a supplemental brief stating that the plaintiffs had failed to plead the issue, raising it for the first time at the hearing of the administrative appeal, and that notice was adequate. On June 22, 1993, the plaintiffs filed a "response to defendant's supplemental brief" stating in their plea that "the Commission otherwise acted illegally, arbitrarily, capriciously and in abuse of its discretion," covers inadequate notice.
The subject of the plaintiffs' appeal is the Commission's grant of a special permit and a revision of a land management plan to the Angelonis for their horse farm. (ROR, I-8, II-3, II-4.) The Angelonis' parcel contains 11.6 acres. (ROR, III-15; III-24; IV-12, p. 6.) The Angelonis' land is lot number 5 of the Huntington Estates. (ROR, III-15; III-24; IV-12, p. 7.) The farm is located at 160 Sunset Hill Road and borders Huntington State Park. (ROR, I-4; I-5; IV-12, p. 7.)
The Angelonis' application to revise their special permit requested seven changes from the original application.[2] (ROR, II-3; II-4; II-7.) On December 11, 1992, a hearing was conducted on the Angelonis' application. (ROR, I-4, I-5.) The Commission received reports and heard testimony from various town residents. (ROR, II-9; Supplemental, December 11, 1991, Deliberations, pp. 22-24, 33a-34, 60-62; Supplemental, January 8, 1992, Deliberations, pp. 38-40, 102-04.)
On January 22, 1992, the Commission voted to approve the Angelonis' application for a special permit and revision of their land management plan. (ROR, I-8.) The Commission imposed the following eight conditions on its granting the Angelonis' application:
1. Dressage ring be moved to be located 50 feet from lot line.
 2. Front two acres defined as the `outside course' on the map be kept fully vegetated and not used if bare ground exists.
 3. All paddocks that border Huntington Park be also kept fully vegetated and not used if bare ground exists. CT Page 3344
4. Manure removal will be daily and the truck will be covered.
 5. Commercial truck deliveries, tractor trailers, and horse vans be allowed only between the hours of 9:00 A.M. and 3:00 P.M. However, horse trailers — including Mr. Angeloni's personal horse trailers — will be allowed to move in those hours and also prior to 7:00 A.M. and after 7:00 P.M.
6. No horse shows on-site that involve other farms.
7. Maximum number of horses to be forty (40).
 8. A change in the wording of the required sign to read, `Warning A Left-Hand Turn Leads to A Dangerous Elbow-Turn.' (ROR, I-8.) On January 28, 1992, the Commission sent John Angeloni a letter informing him of their decision and their conditions.
(ROR, I-9.)
JURISDICTION
A. Aggrievement
Aggrievement is a question of fact for the trial court.Fuller v. Planning Zoning Commission, 21 Conn. App. 340, 343,573 A.2d 1222 (1990). There are two kinds of aggrievement: statutory and classical. Cole v. Planning Zoning Commission,30 Conn. App. 511, 514, 620 A.2d 1324 (1993). The court may rely on record evidence to make its finding of aggrievement. Hall v.Planning Commission, 181 Conn. 442. 444-45. 435 A.2d 975 (1980).
General Statutes, Sec. 8-8 sets forth the requirements of statutory aggrievement in appeals from a zoning commission to the Superior Court. An "`[a]ggrieved person' means a person aggrieved by a decision of a board . . . . In the case of a decision by a zoning commission . . . `aggrieved person' includes any person owning land that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the board." General Statutes, Sec. 8-8(a)(1). A board means a zoning commission. General Statutes, Sec. 8-8(a)(2).
In the present case, the plaintiff Lauer states that he lives at 150 Sunset Hill Road, within 100 feet of Sunset Hill Farm. (Revised Appeal, par. 26.) Lauer introduced two warranty deeds at CT Page 3345 the hearing with this court. (Plaintiffs' Exhibits A B.) The court finds that Lauer's property is within 100 feet of Sunset Hill Farm and finds him to be statutorily aggrieved. In the present case, the plaintiff Pomazi states that she lives at 85 Sunset Hill Road, "which property is in the neighboring vicinity of the horse academy." (Revised Appeal, par. 27.) Pomazi introduced a warranty deed at the hearing with this court; (Plaintiffs' Exhibit E); but does not allege statutory aggrievement or that her property is within 100 feet of Sunset Hill Farm. Therefore, the court finds that she is not statutorily aggrieved.
"The fundamental test for determining [classical] aggrievement encompasses a well-settled twofold determination: first, the party claiming aggrievement must successfully demonstrate a specific personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming [classical] aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the decision. . . ." (Internal quotation marks omitted.) Pomazi v.Conservation Commission, 220 Conn. 476, 482-83, 600 A.2d 320
(1991).
Both plaintiffs allege that they are classically aggrieved. (Revised Appeal, par. 28.) They allege that they each possess a personal and legal interest by virtue of their property ownership and occupation, which interest has been directly and adversely affected by the Commission's decision. They further allege that as a direct result of the decision, they will suffer increased traffic congestion, increased contamination and pollution of surface and groundwaters upon which they rely for domestic use, contamination of a stream and wetland system which issues from the Huntington Estates property and crosses both the Lauer and Pomazi properties, and unnecessary exposure to nuisance conditions generated by the horse academy. (Revised Appeal, par. 28.) The Commission denied that the plaintiffs are classically aggrieved. (Commission's Answer, par. 28.) The Angelonis denied that the plaintiffs are classically aggrieved. (Angelonis' Answer, par. 28.)
In Pomazi Janice Pomazi, the plaintiff in the present action, appealed the Redding Conservation Commission's failure to revoke the application of the defendants Michaels to renew a license. CT Page 3346Pomazi v. Conservation Commission, supra, 482. The Michaels had subdivision approval for the Huntington Estates and a license to conduct regulated activities on this property which contains inland wetlands and watercourses. Id., 479. The Michaels sold lot No. 5 of the Huntington Estates to the Angelonis, the defendants in the present action. Id., 482. In Pomazi the Connecticut Supreme Court reversed the trial court and found that Janice Pomazi was classically aggrieved under General Statutes, Secs.22a-36 to 22a-45. Id. In Pomazi just as in the present case, Janice Pomazi alleged that her property, located in the vicinity of lot No. 5, had a stream and wetland system "likely to capture polluted and contaminated water issuing from the horse riding academy" including affecting her well. Id.
The court, having determined that Lauer is statutorily aggrieved, need not determine whether he is also classically aggrieved. With respect to Pomazi, the court finds that she has not introduced sufficient evidence demonstrating not only that she has a specific personal and legal interest in the subject matter of the Commission's decision, as distinguished from a general interest of all the community members as a whole, but also that her personal and legal interest was specially and injuriously affected by the Commission's decision. Therefore, the court finds that Pomazi is not classically aggrieved.
B. Timeliness
General Statutes, Sec. 8-8(b) states that "any person aggrieved by any decision of a board may take an appeal to the superior court for the judicial district in which the municipality is located," and that the appeal shall be commenced by service of process. The aggrieved party must commence service of process "within fifteen days from the date that notice of the decision was published as required by the general statutes." General Statutes, Sec. 8-8(b).
The Commission directed the Redding Pilot to publish notice on January 30, 1992, of its final decision of January 22, 1992, to approve the Angelonis' application. (ROR, I-8.) On February 13, 1992, the plaintiffs served the Commission through Frank Taylor, Chairman, Redding Zoning Commission; the Town of Redding through Patricia Creigh, Town Clerk of the Town of Redding; and Debra and Luciano Angeloni, the persons who petitioned the Commission. (Sheriff's Returns.) No claim is made by either defendant that service of process was not timely. The court finds CT Page 3347 that the appeal was timely taken.
SCOPE OF REVIEW
"When a zoning authority has stated the reasons for its actions, a reviewing court may determine only if the reasons given are supported by the record and are pertinent to the decision. [Citation omitted.] The zoning board's action must be sustained if even one of the stated reasons is sufficient to support it." Daughters of St. Paul, Inc. v. Zoning Board ofAppeals, 17 Conn. App. 53, 56-57, 549 A.2d 1076 (1988).
"It is a well settled principle that planning and zoning commissions are afforded wide discretion in the implementation and interpretation of local zoning laws." 300 PRW Associates v.Planning Zoning Commission, Superior Court, Judicial District of Fairfield at Bridgeport, Docket No. 28 85 54 (September 21, 1992, Cocco, J.). "[B]ecause the local authority is closer to the circumstances and conditions which create the problem and shape its solution, . . . [agency] authorities are given wide discretion in determining public need and the means of meeting it." Fedorich v. Zoning Board of Appeals, 178 Conn. 610, 613,424 A.2d 289 (1979). Absent illegality, arbitrariness or abuse of discretion, the court is bound to affirm the zoning authority's decision. Pleasant View Farms Development, Inc. v. Zoning Boardof Appeals, 218 Conn. 265, 269, 588 A.2d 1372 (1991); Frito-Lay,Inc. Planning Zoning Commission, 206 Conn. 554, 573,217 A.2d 444 (1988). On appeal, the court must assess "whether the reasons assigned [for the zoning authority's decision] are reasonably supported by the record and whether they are pertinent to the considerations which the commission is required to apply under the zoning regulations." (Internal quotation marks omitted.)Friedman v. Planning Zoning Commission, 222 Conn. 262, 268,608 A.2d 1178 (1992).
"The commission is entrusted with the function of interpreting and applying its zoning regulations." GormanConstruction Co. v. Planning Zoning Commission, 35 Conn. App. 191,195, 644 A.2d 964 (1994). "The trial court must determine whether the commission has correctly interpreted its regulations and applied them with reasonable discretion to the facts."Dimopoulos v. Planning Zoning Commission, 31 Conn. App. 380,383, 625 A.2d 236 (1993). "The trial court can sustain the . . . appeal only upon a determination that the decision of the commission was unreasonable, arbitrary or illegal. . . ." Id. The CT Page 3348 trial court "must not substitute its judgment for that of the zoning commission and must not disturb decisions of local commissions as long as honest judgment has been reasonably and fairly exercised." Gorman Construction Co. v. Planning ZoningCommission, supra, 35 Conn. App. 195-96. The burden of showing that the Commission's actions were improper rests on the plaintiff. Dimopoulos v. Planning Zoning Commission, supra,31 Conn. App. 383; Adolphson v. Zoning Board of Appeals, 205 Conn. 703,707, 535 A.2d 799 (1988).
"When ruling upon an application for a special permit, a planning and zoning board acts in an administrative capacity."Double I Ltd. Partnership v. Plan Zoning Commission, 218 Conn. 65,72, 588 A.2d 624 (1991). "The zoning commission has no discretion to deny the special exception [or permit] if the regulations and statutes are satisfied. . . ." (Internal quotation marks omitted.) Felsman v. Zoning Commission, 31 Conn. App. 674,678, 626 A.2d 825 (1993).
CLAIMS OF THE PLAINTIFF
In their brief, the plaintiffs offer the following four grounds in support of their appeal. First, the plaintiffs argue that the "Commission's decision is invalid because it failed to submit the application to the Redding inland wetlands agency"; (Plaintiffs' Brief, p. 5); and that it failed to submit the application to the Planning Commission, Board of Selectmen and Health Department. (Plaintiffs' Brief, p. 6; Revised Appeal, par. 24(2).) Second, the plaintiffs argue that the "Commission impermissibly allowed an additional principal use and failed to require that the owner and operator of the horse academy reside on the premises." (Plaintiffs' Brief, p. 7.) Third, the plaintiffs argue that the "Commission had no support in the record to make the `required findings' of Section 5.1.3." (Plaintiffs' Brief, p. 7.) Fourth, the plaintiffs argue that Commissioner Casiello and Commissioner Sanford were impermissibly biased in favor of the applicant. (Plaintiffs' Brief, p. 10.) The plaintiffs also argue in a supplemental brief that the Commission's pre-hearing notice was inadequate. (Plaintiffs' Supplemental Brief, p. 1.)
First, the plaintiffs argue that the Commission failed to submit their application to the "Redding inland wetlands agency." General Statutes, Sec. 8-3c states that "[i]f an application for a special permit . . . involves an activity regulated pursuant to CT Page 3349 sections 22a-36 to 22a-45 [regarding inland wetlands and watercourses], inclusive, the applicant shall submit an application to the agency responsible for administration of the inland wetland regulations. . . ." (Emphasis added.) General Statutes, Sec. 8-3c requires the applicant to submit his application to the agency responsible for inland wetland regulation if it involves a regulated activity. A regulated activity "means any operation within or use of a wetland or watercourse involving removal or deposition of material, or any obstruction, alteration or pollution, of such wetlands or watercourses. . . ." General Statutes, Sec. 22a-38(13).
According to a Certified Soil Scientist, there are "no wetlands on the site and none close enough [to be] affected by the farm's activities." (ROR, Supplemental, January 8, 1992, Deliberations, pp. 159-60.) The Commission received a report from HTM, Soils Consulting Service stating with regard to the subject property that "there are no poorly or very poorly drained soils or perennial or intermittent water courses that would be classified as wetlands under the Inlands Wetlands Act." (ROR, II-10.) The court finds that the failure to submit the application to the Redding Conservation Commission, acting in its capacity as the Redding inland wetlands agency pursuant to General Statutes, Sec. 22a-42(c), does not invalidate the Commission's decision because the record reflects that there was no regulated activity involved.
The plaintiffs also argue that according to section 5.1.2 of the Zoning Regulations of the Town of Redding, the Commission should have submitted the application to the Planning Commission, Board of Selectmen and Health Department. (Plaintiffs' Brief, p. 6.) Section 5.1.2 describes the "Procedure" for Article V, "Development Standards." (ROR, Vl.) According to section 5.1, "[a] use subject to Special Permit shall not be established, altered or enlarged until specific findings and approval have been made by the Zoning Commission under the following regulations." (ROR, Vl.) Section 5.1.2 states that "[o]ne copy of the application . . . shall be referred within 10 days of receipt, by the Commission, to the following Town agencies with a request for an advisory report: Board of Selectmen, Conservation Commission, Health Department, Planning Commission." (Emphasis added.) (ROR, Vl.) There is no evidence in the record of the Commission's having submitted the Angeloni application to any agency. CT Page 3350
There were two advisory opinions filed regarding the Angelonis' original application for a special permit to operate a horse farm. (ROR, IV-8, IV-9.) On April 11, 1989, the Planning Commission wrote the Commission a letter stating its opinion that a horse farm is an appropriate use of land in Redding but that a "more appropriate and less sensitive site should be chosen." (ROR, IV-8.) On April 11, 1989, the Redding Conservation Commission wrote the Commission a letter stating its opinion that use of the land for a riding academy was "not consistent with the mandate of the Conservation Commission to conserve and supervise the Town's natural resources including water resources, nor its original purpose in recommending that Lot 5 [of the Huntington Estates] remain as one unsubdividable parcel for the protection of the site as it was left by Mrs. Huntington." (ROR, IV-9.) There was, however, no input from the Health Department or the Board of Selectmen.
The Angelonis argue in their brief that any failure to submit their current application to alter their special permit is harmless error because, they submit, any advisory opinions regarding their current application could not be more negative than the opinions rendered upon their original application. (Defendants Angelonis' Brief, pp. 7-8.) The Commission does not address the plaintiffs' argument that it failed to refer the current application to other agencies and request advisory reports. The court must determine the effect of the Commission's failure to submit the current application to the various agencies.
The general rule is that the word "shall" is mandatory, not directory. Jones v. Civil Service Commission, 175 Conn. 504,509-10, 400 A.2d 721 (1978). The fact that a provision uses the word "shall" does not, however, always indicate that the clause is mandatory. Yanni v. DelPonte, 31 Conn. App. 350, 353,624 A.2d 1175 (1993). Moreover, statutes and regulations must be construed so as not to thwart their intended purposes. Narel v. Liburdi,185 Conn. 562, 571, 441 A.2d 177 (1981), cert. denied, 456 U.S. 928,102 S.Ct. 1974, 72 L.Ed.2d 443 (1982). "The result should be a rational and sensible one that bears directly on the legislative objective. Peck v. Jacquemin, 196 Conn. 53, 66,491 A.2d 1043 (1985)." Langan v. Weeks, 37 Conn. App. 105, 122, ___ A.2d ___ (1995).
"In determining whether a statute [or regulation] is mandatory or merely directory, the most satisfactory and CT Page 3351 conclusive test is whether the prescribed mode of action is of the essence of the thing to be accomplished or, in other words, whether it relates to matter of substance or to matter of convenience. [Citation omitted.] Provisions relating to matters of substance are mandatory, whereas provisions designed to secure order, system and dispatch in the proceedings [are] generally held to be directory. . . ." (Internal quotation marks omitted.)Koepke v. Zoning Board of Appeals, 30 Conn. App. 395, 398,620 A.2d 811 (1993), rev'd on other grounds, 230 Conn. 452,645 A.2d 983 (1994). A legislative or regulatory provision designed to secure order, system and dispatch is "generally held to be directory, especially where the requirement is stated in affirmative terms unaccompanied by negative words." (Internal quotation marks omitted.) Bryant v. Bryant, 228 Conn. 630, 639,637 A.2d 1111 (1994). "To determine whether a particular provision is mandatory or directory, the court must examine the . . . [regulation's] language, the legislative history, and the statutory [or regulatory] context." Langan v. Weeks, supra,37 Conn. App. 122.
In the present case, the court finds the regulation to be mandatory, considering the circumstances of the case and the context of the particular regulation. Section 5.1.2 explicitly states that the application "shall be referred within 10 days of receipt, by the Commission, to the . . . Health Department," among other bodies, for an advisory report. Article VIII of the regulations provides, in the definition section, that "[w]ords and phrases used in these Regulations have the conventional meanings established by standard dictionaries, except as defined in the following sections." The following sections contain no definition of the word shall. In Webster's Third New International Dictionary 2085 (1966), shall is defined as: "will have to: must"; "used to express a command or exhortation"; "used in laws, regulations, or directives to express what is mandatory . . . ." Based on the unambiguous language of the regulations, the court finds the word "shall" to be mandatory.
Further, the following purposes of the zoning regulations are set forth in Article II, "Statement of Purpose": Section 2.1 "[t]o preserve the predominant residential, rural and agrarian characteristics of the Town of Redding, and to protect the health, safety and general welfare of its inhabitants"; Section 2.5 "[t]o secure safety from fire, panic, flood, erosion, air pollution, water pollution, and other dangers"; Section 2.7 "[t]o protect the character and economic stability of the Town, by CT Page 3352 assuring that development is commensurate with available roads and other public facilities, and with the capacity of the land to support safe water supply and sewage disposal"; Section 2.10 "[t]o prevent contamination of groundwater and of surface water, including all streams, ponds, wetlands, aquifers, flood plains, well fields and water supply sources, and to control the erosion and siltation of water courses"; Section 2.11 "[t]o conserve and protect the Town's natural and cultural resources including: . . . basic resources such as soil, water, atmosphere, vegetation and wildlife; in recognition of the indispensable contribution of each of these resources to a livable environment for the community." Based on the foregoing, the court finds that the purpose of the regulations is to mandate reasonable conservation efforts and a concern for the safety of humans and the environment within the context of development.[3]
Considering the purpose of the regulations and the factual circumstances of this case, which include the disposal of manure and urine, the court finds that a referral of the special permit application to the Board of Selectmen, Conservation Commission, Health Department and the Planning Commission, within ten days of the filing of the petition, was mandatory, based on the Town's stated concern for the health and safety of its citizenry and of the environment.
In Simmons v. Zoning Commission, 35 Conn. Sup. 246, 252-54,407 A.2d 191 (1979), the court, after reviewing the unambiguous language of General Statutes, Sec. 8-3b and its legislative history, determined that the statute was mandatory. Section 8-3b
required that prior to thirty-five days before the public hearing on the matter, the municipality shall give written notice of its proposal for a zone change or any regulation affecting the use of a zone within 500 feet of the boundary of another municipality to such regional planning agency. Id., 253. The court held that the municipality's failure to notify the planning agency of the proposed change went to the essence of the statutory purpose of requiring notification. As a result, the court sustained the appeal. Id.
Similarly, in Gross v. Planning Zoning Board of Appeals,171 Conn. 326, 327-28, 370 A.2d 944 (1976), the Supreme Court held that is was an abuse of discretion for the Greenwich Zoning Board to not follow the unambiguous requirements of its regulations mandating the filing of a written memorandum of decision on an application for a variance. The court wrote that CT Page 3353 "[i]t is difficult to conceive of more unequivocal language than that contained in section 28a(3) in setting forth a prerequisite of written findings before a variance can be granted. . . . In granting the variance the board ignored the requirements of the Greenwich zoning regulations, and the variance, therefore, was not properly granted." Id.
The court determines that a similar result should attach in this case. "It is difficult to conceive of more unequivocal language than that contained in" section 5.1.2. Id. Considering that unequivocal language, the purposes of the regulatory scheme and the importance of having input from health officials, as well as the other three bodies, in determining whether or not to grant the special permit under the circumstances of this case, the court finds the language of section 5.1.2 to be mandatory. The court, having found that the language of section 5.1.2 is mandatory, and that the unambiguous notification requirement was not followed, the appeal should be sustained on this ground.Gross v. Planning Zoning Board of Appeals, supra, 171 Conn. 329;Simmons v. Zoning Commission, supra, 35 Conn. Sup. 257. The court need not address any other claims of the plaintiff. For the foregoing reasons, the plaintiffs' appeal is sustained.
Riefberg, J.