**BIG PINEY OIL & GAS COMPANY, Plaintiff,**

v.

**WYOMING OIL AND GAS CONSERVATION COMMISSION and Belnorth, Defendants.**

**No. 85–251.**

Supreme Court of Wyoming.

March 13, 1986.

George M. Porter and Richard L. Williams of Williams, Porter, Day & Neville, P.C., Casper, for plaintiff.

Joe Scott, Sp. Asst. Atty. Gen., Casper, for defendant Wyoming Oil and Gas Conservation Comn.

Thomas F. Reese of Brown, Drew, Apostolos, Massey & Sullivan, Casper, for defendant Belnorth (Belco Development Corp.).

Before THOMAS, C.J., and BROWN, CARDINE, URBIGKIT and MACY, JJ.

MACY, Justice.

This case comes before us on a certification from the district court. We are asked

to review an order of the Wyoming Oil and Gas Conservation Commission (Commission) which restricted production from the gas wells of appellant Big Piney Oil & Gas Company (Big Piney) to prevent waste of hydrocarbons from the adjoining Big Piney Mesaverde Unit (Unit).

We affirm the Commission's order.

During the 1950's, the owners of separate leases, including Big Piney, drilled and produced oil and gas from the Mesaverde formation under their several leases in the area designated as the Big Piney field in Sublette County, Wyoming. In the early part of the 1960's, these same lessees determined that it would be advantageous to form a unit for the purpose of conducting secondary recovery operations. During the preunitization negotiations in 1965 and 1966, Big Piney elected not to be included within the Unit. Nevertheless, the Unit was formed by the remaining lessees in 1967. In 1979, appellee Belco Development Corporation (Belco) took over as Unit operator.

The Unit surrounds Big Piney's 160-acre government lease on the north, east, and south, which lease contains five wells. Each of the wells is producing gas from the gas cap in the Mesaverde formation.

Belnorth Petroleum Corporation[1] filed an application with the Commission alleging in substance:

1. That Big Piney is producing from its wells at a rate which is depleting the gas cap in the Unit;

2. That continued operation of the wells violates the correlative rights of the Unit interest owners; and

3. That continued operation of the wells jeopardizes the secondary recovery program because of the loss of the gas cap, and because Big Piney is producing more than its equitable share from the common pool.

The applicant then prayed that the Commission shut in the production of Big Pi-

ney's wells or, in the alternative, force Big Piney into the Unit.

The Commission reviewed the matter at hearings on three separate occasions, at which times the parties introduced evidence for and against the application. On June 21, 1985, the Commission entered an order restricting the production of gas from the Mesaverde formation by Big Piney on its government lease in the Big Piney field. On July 18, 1985, Big Piney filed a petition for judicial review of this matter in the District Court for the Seventh Judicial District. Instead of reviewing the matter, the district court issued an order on November 6, 1985, certifying this case to the Wyoming Supreme Court pursuant to Rule 12.-09, W.R.A.P., 1985 Cum.Supp. Big Piney's statement of issues for consideration by this Court is as follows:

1. Does Belnorth (Belco) have standing to bring this action before the Commission?

2. Was Belnorth (Belco) precluded from bringing this action in its own behalf as well as operator of the Big Piney Mesaverde Unit (Unit) by reason of estoppel, waiver, or laches?

3. Was the order entered by the Commission dated June 21, 1985, in Cause No. 3, Order No. 9, Docket No. 193–85, arbitrary, capricious, and an abuse of discretion?

4. Does the Commission have legal authority to restrict the production of only one operator in a pool or must it restrict all operators ratably?

5. Is the order entered by the Commission and the subject of this review contrary to law, unconstitutional, and therefore void?

I

■ In its first assignment of error, Big Piney contends that Belco had no standing to bring this action before the Commission and, therefore, the application should have been dismissed. In support of its claim,

---

**1.** Subsequently the application was amended to state Belco Development Corporation, an affil-

iated corporation of the applicant.

Big Piney asserts that although the Commission has the statutory authority to investigate and enforce Wyoming oil and gas laws and regulations, it has no authority to act in a judicial capacity by reviewing complaints filed by other parties.

Big Piney cites no authority in support of its claim. We, however, direct attention to the following statutory provisions. Section 30–5–102(a), W.S.1977 (June 1983 Replacement), provides that "[t]he waste of oil and gas or either of them in the state of Wyoming * * * is hereby prohibited." Section 30–5–111(d), W.S.1977 (June 1983 Replacement), provides in pertinent part:

> " * * * In all cases where a complaint is made by the commission, or by the state oil and gas supervisor or *by any party* that *any provision of this act,* or any rule, regulation or order of the commission is being violated, notice of the hearing on such complaint shall be served on the parties charged with such violation * * *." (Emphasis added.)

These provisions clearly authorize any party to bring any alleged violation of the act before the Commission by the filing of a complaint. We, therefore, hold that Belnorth (Belco) had standing to file the petition and that the Commission had the authority and the duty to act upon it.

## II

Big Piney argues next that the equitable doctrines of estoppel, waiver, and laches, or a combination thereof, should be applied by this Court against Belco and the Commission. In the first instance, it is argued that Belco acquiesced in appellant's production of gas from the gas cap for a period of eighteen years and, therefore, cannot now complain of the production. In the second instance, it is argued that the Commission had a duty to investigate to determine if waste was occurring, that it failed to do so over an eighteen-year period, and that, therefore, it is now restrained from restricting appellant's production under one of the aforementioned doctrines. In support of the latter claim, appellant points to § 30–5–104(b), W.S.1977, 1985 Cum.Supp.,

which provides: "The commission has authority and it is its duty to make investigations, to determine whether waste exists or is imminent, or whether other facts exist, which justify or require action by it hereunder."

While acknowledging the Commission's statutory duty to investigate, we are not persuaded by appellant's claim.

■ The equitable doctrine of waiver, either as to Belco or the Commission, was not raised before the Commission and is, therefore, not to be considered for the first time on appeal. *Wyoming Bank & Trust Company of Buffalo v. Bonham,* Wyo., 606 P.2d 296 (1980).

■ Equitable estoppel should not be invoked against a government or public agency functioning in its governmental capacity, except in rare and unusual circumstances and may not be invoked where it would serve to defeat the effective operation of a policy adopted to protect the public. 31 C.J.S., Estoppel § 138 (1964). In *Edgar v. Stanolind Oil & Gas Co.,* Tex. Civ.App., 90 S.W.2d 656 (1935), the question was whether or not the conservation laws of the state were being contravened. The court stated:

> " * * * That is a matter in which the public is concerned; and private parties cannot by conduct and agreement between themselves, whether by estoppel or otherwise, vitiate the conservation laws, nor obstruct their proper enforcement. And it is immaterial whether the enforcement of such conservation laws is invoked by interested parties or by the state, if a violation thereof is shown. *The public interest in the conservation of such natural resources is the matter of paramount concern, and one against which estoppel as between the private property rights of the adjacent leaseholders cannot prevail."* (Emphasis added.) 90 S.W.2d at 658.

Then, in *Humble Oil & Refining Co. v. Trapp,* Tex.Civ.App., 194 S.W.2d 781, 787 (1946), the court stated:

"It is now settled law that acts or agreements of private parties cannot be binding upon, nor work an estoppel against, the agencies of the State in the enforcement of its conservation laws. [Citation.] Those are matters in which the public interest controls. * * * "

Finally, in the more recent case of *Northwest Central Pipeline Corporation v. State Corporation Commission*, 237 Kan. 248, 699 P.2d 1002 (1985), the court refused to apply the doctrine of estoppel when the prevention of waste for the benefit of the public was at stake.

 Appellant next contends, in an effort to cover all the bases, that if the doctrine of estoppel does not apply, the doctrine of laches does. Laches has been variously defined as such delay in enforcing one's rights that it works to the disadvantage of another. 30A C.J.S., Equity § 112 (1965). Governments and their agencies are generally not barred by laches when enforcing a public or governmental right. 30A C.J.S., Equity § 114 (1965). From these general principles, we find that it matters not whether the doctrine of estoppel or laches, or a combination thereof, would be applicable between Big Piney and Belco; such does not prevent the Commission from fulfilling its duty to prevent waste by restricting Big Piney's gas production. In view of this holding, we find it unnecessary to consider whether the actions or inactions of Belco would have otherwise triggered the application of these equitable doctrines.

### III

 Appellant's third issue, that the Commission's order is arbitrary, capricious, and an abuse of discretion, is based on the assertion that the Commission failed to consider all of the evidence presented, that its findings of fact do not adequately disclose the grounds upon which the order was granted, and that the order is not supported by substantial evidence.

Section 16-3-110, W.S.1977 (October 1982 Replacement), provides:

"A final decision or order adverse to a party in a contested case shall be in writing or dictated into the record. The final decision shall include findings of fact and conclusions of law separately stated. Findings of fact if set forth in statutory language, shall be accompanied by a concise and explicit statement of the underlying facts supporting the findings. Parties shall be notified either personally or by mail of any decision or order. A copy of the decision and order shall be delivered or mailed forthwith to each party or to his attorney of record."

This Court has held that this statute imposes a duty on the agency to make findings of basic facts upon which its ultimate findings of fact or conclusions are based, without which there can be no basis for appeal. *Pan American Petroleum Corporation v. Wyoming Oil and Gas Conservation Commission*, Wyo., 446 P.2d 550 (1968). This Court also stated in *Larsen v. Oil and Gas Conservation Commission*, Wyo., 569 P.2d 87, 91 (1977):

"It is impossible for this court to discharge its appellate obligation of determining whether or not findings of fact are supported by the evidence, and lawful, logical and reasonable conclusions have been drawn, unless a detailed finding of fact on all the material issues is made by the administrative agency. * * *"

Without getting into an endless and futile discussion as to what is a basic fact and what is an ultimate finding of fact, suffice it to say that we have not found it impossible or, for that matter, difficult to review the record on appeal to determine whether or not the Commission's findings of fact are supported by substantial evidence.

We have adopted a definition of substantial evidence, when conducting a review of an agency, to be such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Mountain Fuel Supply Company v. Public Service Commission of Wyoming*, Wyo., 662 P.2d 878 (1983); *Board of Trustees, Laramie County School District No. 1 v. Spiegel*,

Wyo., 549 P.2d 1161 (1976). Such evidence may be less than the weight of the evidence but cannot be contrary to the overwhelming weight of the evidence. *Mountain Fuel Supply Company v. Public Service Commission of Wyoming, supra.*

Applying these standards to the evidence presented in this case, we find that there is substantial evidence to support the findings of fact made by the Commission on all of the material issues. We perceive these issues to be whether or not substantial waste has and will continue to occur in the future if Big Piney is permitted to continue unabated production and whether this will cause a violation of correlative rights. We summarize the testimony as follows:

1. There is uncontradicted testimony that Big Piney's wells are producing from the same formation as the Unit wells, which production has exceeded 150 percent of the estimated gas in place under Big Piney's lease.

2. Overproduction from the gas cap has caused, and will continue to cause, migration of the oil column in the Unit into the dry gas cap.

3. Approximately 500,000 barrels of oil have migrated into the dry gas cap, and there is a potential loss of 800,000 barrels of oil if Big Piney is permitted to continue unabated production.

4. The oil that has or will migrate into the dry gas cap cannot be recovered.

5. There has been no production from the gas cap wells on the Unit lands.

6. The Commission's staff engineer was instructed to determine what restrictions should be imposed to prevent damage to the reserve and to protect correlative rights.

7. The staff engineer presented his findings to the Commission and presented oral and documentary evidence to justify the restriction he recommended.

8. Big Piney had the opportunity but made no objections to the engineer's computations, findings, or recommendations.

If there is substantial evidence to support a finding, as there is here, the ultimate weight to be given that evidence is to be determined by the agency in light of its expertise and the experience of its members in such matters. *Mountain Fuel Supply Company v. Public Service Commission of Wyoming, supra.* If the agency's decision is found to be supported by substantial evidence, we cannot substitute our judgment for that of the agency, but we are required to uphold its findings upon appeal. *McCulloch Gas Transmission Company v. Public Service Commission of Wyoming,* Wyo., 627 P.2d 173 (1981); *Williams v. Public Service Commission of Wyoming,* Wyo., 626 P.2d 564, cert. denied 454 U.S. 896, 102 S.Ct. 394, 70 L.Ed.2d 211 (1981).

IV

Appellant's fourth contention is that the Commission's order restricting its production is contrary to law and ultra vires. More specifically, appellant complains that the restriction on only one operator in the pool is a violation of that operator's correlative rights.

Section 30–5–101(a)(ix), W.S.1977 (June 1983 Replacement), provides:

" 'Correlative rights' shall mean the opportunity afforded the owner of each property in a pool to produce, so far as it is reasonably practicable to do so without waste, his just and equitable share of the oil or gas, or both, in the pool."

Section 30–5–102(b), W.S.1977 (June 1983 Replacement), further provides:

"Whenever in order to prevent waste the commission limits the total amount of oil and gas which may be produced in any pool in this state to an amount less than that amount which the pool could produce if no restriction was imposed, the commission shall allocate or distribute the allowable production among the several wells or producing properties in the pool on a reasonable basis, preventing or minimizing reasonably avoidable drainage from each developed area not equalized by counter-drainage, so that each

property will have the opportunity to produce or to receive its just and equitable share, subject to the reasonable necessities for the prevention of waste."

Based on these provisions, appellant argues that the Commission had no authority to restrict its production without similarly restricting Belco's production. Appellant's argument fails for the following reasons.

Testimony at the hearing demonstrated that the waste in question was caused by the production of gas cap gas. Testimony indicated further that while Belco was producing casinghead gas, it was not producing gas cap gas; thus, there was no production by Belco to restrict in order to prevent waste. Should Belco begin production of gas cap gas in the future, appellant would clearly be entitled, under the above statutes, to an allocation of production so that each operator would have the opportunity to produce its equitable share.

Furthermore, the record reflects that, due to migration of gas into the gas cap, appellant has already produced more gas from the common pool than was estimated to be under its lease. For this reason, it would be inequitable to restrict production of gas cap gas by Belco until such production has reached the level already produced by appellant.

Finally, we note that the rights granted by the statutory provisions cited above are limited. That is, although the owner of each property in a pool has the right to produce its equitable share of the oil and gas in the pool, that right is always subject to the need to prevent waste. For these reasons, we find that the Commission had the authority to restrict appellant's production without similarly restricting Belco's production.

## V

■ Appellant's final contention is that the order entered by the Commission is contrary to law, unconstitutional, and therefore void. We have already stated that the order is not contrary to law based upon the issues raised by appellant before the Commission. Appellant now contends for the first time on appeal that the restriction on its production is so unreasonable and confiscatory that it amounts to a taking of property without just compensation in violation of the Fourteenth Amendment to the United States Constitution.

Appellant fails to appreciate that the Commission's order represents a valid exercise of the State's police power; it does not constitute a taking under the right of eminent domain.

" * * * [E]minent domain takes property because it is useful to the public, while the *police power regulates the use of property or impairs rights in property because the free exercise of these rights is detrimental to public interest * * *.*" (Emphasis added.) 29A C.J.S., Eminent Domain § 6 at 178 (1965).

When exercising its police powers, the State must act reasonably and cannot, under the guise of such powers, impose unreasonable or arbitrary regulations. *Steffey v. City of Casper*, Wyo., 357 P.2d 456 (1960). As we previously stated, it is the statutory duty of the Commission to prevent waste and to protect correlative rights. We do not find the restrictions imposed by the Commission in the present case to be an unreasonable or arbitrary means of fulfilling that duty. The Commission must be given wide discretion in performing its statutory duty, and we will not substitute our judgment for that of the Commission on disputed factual issues as to how that duty is best performed. *Toavs v. State ex rel. Real Estate Commission*, Wyo., 635 P.2d 1172 (1981).

We also do not find the restriction to be confiscatory. Appellant has produced one and one-half times the amount of gas estimated to be under its lease. In short, we hold that the Commission's order does not constitute a taking in violation of the Fourteenth Amendment and does not reach the level of inverse condemnation as claimed by appellant; therefore, the order of the Commission is affirmed.