# JUDITH LANGAN *v.* JOHN WEEKS
## (12846)

DUPONT, C. J., and SCHALLER and HENNESSY, Js.

Argued November 28, 1994—decision released March 7, 1995

*Judith Solomon,* with whom, on the brief, were *Kimberly Newman* and *Lucy Porter,* for the appellant (plaintiff).

*Rochelle Homelson,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Donald M. Longley,* assistant attorney general, for the appellee (state).

DUPONT, C. J. The sole issue of this appeal is whether the plaintiff,[1] in exchange for receiving public assistance from the state of Connecticut, assigned to the state her right to current and future support payments from the father of her child, as well as to amounts already owed to her by him, but not yet paid at the time of her application, for periods of time when she was not receiving benefits. We conclude that the trial court was correct in determining that the assignment was valid.

The defendant, John Weeks, was adjudicated the father of the plaintiff's child in 1986 and ordered to make support payments to the plaintiff in the amount of $50 per week. The plaintiff and the child received aid to families with dependent children (AFDC) during several periods following that adjudication.

---

[1] The word "plaintiff" as used in this decision refers to the appellant, Judith Langan. The appellee, the state of Connecticut, is also technically a party plaintiff pursuant to General Statutes (Rev. to 1993) § 46b-160 (a), which provides in pertinent part: "Proceedings to establish paternity of a child born or conceived out of lawful wedlock . . . shall be instituted by a verified petition of the mother or expectant mother . . . . In cases involving public assistance recipients the petition shall also be served upon the attorney general who shall be and remain a party to any paternity proceeding and to any proceedings after judgment in such action. . . ."

In April, 1991, the child support enforcement bureau[2] filed a contempt action against the defendant for failure to pay child support. At the contempt hearing before a family support magistrate,[3] the support enforcement bureau argued that the amount of the defendant's arrearage to which the state was entitled was the total of all unreimbursed public assistance payments made to the plaintiff by the state since 1986, regardless of whether the arrearage owed to the plaintiff by the defendant was payable for a period of time when the state was not making public assistance payments to the plaintiff. In other words, the state claimed that the plaintiff had assigned to the state all of her support rights from the defendant, past and current, pursuant to General Statutes (Rev. to 1993) § 17-82b (now § 17b-77).[4] The plaintiff argued to the contrary. In order to resolve this issue, at the request of the state and the plaintiff, a special hearing was held by the magistrate.

The state presented evidence to the magistrate, through both testimony and exhibits, of the federal and state statutory and regulatory requirements mandating the assignment of support rights by a recipient as

---

[2] This bureau was created within the department of social services and works cooperatively with the judicial department, law enforcement officials, and the attorney general. General Statutes § 17b-179 (formerly § 17-578).

[3] Family support magistrates have jurisdiction to entertain applications for contempt and to make findings of contempt, as well as to imprison for contempt. General Statutes § 4b-231 (m) (7); *Perry* v. *Perry*, 222 Conn. 799, 611 A.2d 400 (1992).

[4] General Statutes (Rev. to 1993) § 17-82b (now § 17b-77) provides in pertinent part: "Application for aid under this chapter shall be made to the commissioner of income maintenance. . . . By such application, the applicant shall assign to the commissioner the right of support, present, past, and future, due all persons seeking assistance and shall assist the commissioner in pursuing support obligations from the absent parent. Notice of such assignment shall be conspicuously placed on said application and shall be explained to the applicant at the time of application."

a condition for eligibility for AFDC benefits. The magistrate also admitted into evidence copies of documents completed at the time of the plaintiff's applications for AFDC assistance. These showed that the plaintiff had received AFDC benefits for various periods between 1986 and 1991 and that a total of $17,245.71 in public assistance benefits had been paid on behalf of the plaintiff and her child, which was a sum greater than the amount of the arrearage due the plaintiff by the defendant.

The state's evidence also showed that each time the plaintiff applied for AFDC benefits, she signed an application form that contained the language: "I assign to the State *all* the support rights which I have against any person in behalf of any family member for whom I am applying or receiving assistance." (Emphasis added.) The plaintiff also signed, each time she applied for assistance, a "Notice to AFDC Recipients Regarding Cooperation in Obtaining Support," which contains the language, "you must turn over *all* child support payments you receive . . . if you fail to comply with this requirement, you will become ineligible and be removed from the assistance unit . . . ." (Emphasis added.) Finally, the state submitted a document, signed by the plaintiff, entitled "Department Responsibilities for Explaining the Following," listing areas that "intake workers" must discuss with AFDC applicants. Child support assignment is not listed as one of these mandatory areas, but there is language on the form pertaining to support assignment that states: "I understand . . . I have assigned *all* my support rights to the State. This means that if I receive child support directly, I will turn it over to the state." (Emphasis added.) Thus, there were three separate documents that made the plaintiff aware of an assignment of child support rights to the state.

The plaintiff last applied for AFDC in September, 1991, when she lost her job. A child support arrearage of $3043.62 was owed to her at the time, representing amounts the defendant had not paid since the plaintiff had stopped receiving AFDC in 1990. In January, 1992, three months after she had applied for assistance, the plaintiff began receiving unemployment compensation and again stopped receiving AFDC.

The plaintiff testified at the hearing before the magistrate that each time she applied for AFDC benefits, she had read the assignment language, but did not question it because she thought it applied only to current support amounts. She further testified that she had had the same caseworker on at least three different occasions when she applied for assistance and that she had never been informed that the assignment of child support would extend to money previously owed to her as well as to her right to ongoing support.[5] She also testified that on a prior occasion in 1990, the department had allowed her to keep a lump sum child support payment representing an arrearage that had accrued while she was not receiving assistance, even though she was on assistance at the time she received the payment and had reported it to the department.[6] The state presented evidence, however, that in 1989 the plaintiff reported

---

[5] The plaintiff testified that each time she applied for AFDC the following occurred: "When we got down to the child support section . . . [the caseworker] read it off to me and I asked her what it meant, and she said . . . if he paid child support . . . that I would . . . receive $50 of it for the month extra, not including what I would get as a grant, and that anything over that I would not receive and it would go towards the state's . . . paying me for benefits."

[6] The plaintiff testified: "I called . . . [the caseworker] and I was told that he was going to be giving me a lump sum payment of $810. And that was my money when I was not on state and I was working and struggling and paying a babysitter and, you know, doing it all on my own, and that money was owed to me. And she gave it to me. . . . She didn't penalize me for it, she didn't take away my supplement. I got to keep the money. And I did receive a state check."

a lump sum payment of past due support as required by one of the forms she signed and that the department of income maintenance required her to repay that money to the state.

The plaintiff testified that had she understood that she was giving up her right to the $3043.62 arrearage in support payments, accrued while she was not receiving state support, she would not have applied for state assistance, but would have instead sought help from her fiance and family.

The magistrate asked the plaintiff's witness, Patrick Hearn, supervisor of the Torrington department of income maintenance, how he would respond to someone who specifically inquired whether an arrearage owed to her would be affected if she applied for assistance. He answered that he had never been asked such a question, and that he would have to consult with support enforcement services before he would be able to answer such a question.

The magistrate found two arrearage amounts, one for sums owed by the defendant to the plaintiff for periods when the plaintiff was not receiving state aid, and the other for sums owed by the defendant to the plaintiff for periods when she was receiving state aid. The magistrate held that the plaintiff was entitled to an arrearage of $3488.62,[7] which included the $3043.62 arrearage that had accumulated prior to the plaintiff's September, 1991 AFDC application, during a period when the plaintiff was not receiving assistance, and that the state was entitled to $4738.94, the amount owed by the defendant to the plaintiff from September, 1991, to May 27, 1992, when she was receiving aid.

The state appealed from the magistrate's findings to the Superior Court, where oral arguments, but no fur-

---

[7] This amount includes an arrearage of $445 accrued subsequent to the termination of the plaintiff's AFDC benefits.

ther evidence or testimony, were heard. The trial court found that the assignment had not been conspicuously placed on the application and that the plaintiff's caseworker had given no explanation about the assignment of the arrearage. The court also found that the plaintiff did receive notice on the application itself, although it was not extensive, and that the plaintiff was given the opportunity to ask questions but chose not to do so.[8] The court concluded that (1) the assignment of support rights under General Statutes (Rev. to 1993) § 17-82b (now § 17b-77) arises by operation of law, and (2) the notice and explanation provisions of § 17-82b are directory, rather than mandatory. The court reversed the magistrate's decision and rendered judgment for the state for $8227.56.[9]

On appeal, the plaintiff claims that (1) the assignment of child support arrears was invalid because notice of the assignment was not conspicuously placed on the AFDC application or explained as required by General Statutes (Rev. to 1993) § 17-82b (now § 17b-77), and her constitutional rights to due process were violated, (2) the notice provision in § 17-82b is mandatory rather than directory, (3) the state was estopped from claiming an assignment of the arrearage, (4) the state was

---

[8] Additionally, in a footnote to the memorandum of decision, the court states: "This court does not condone the fact that the assignment provision on the application was not conspicuous and that the intake worker did not fully explain the extent of the assignment to the plaintiff. However, an assistant attorney general has assured this court that application forms and procedures are being modified so as to comply with the notice provisions of General Statutes (Rev. to 1993) § 17-82b. The department should review its intake procedure to incorporate discussion about the assignment and what it means to the recipient."

[9] This amount includes the arrearage of $445 owed to the plaintiff for a period of time subsequent to her last period of receiving assistance. See footnote 7. The state noted at oral argument before the trial court that it made no claim to this $445 arrearage.

not precluded from enacting legislation implementing Title IV-D of the Social Security Act to provide broader protection to the state's citizens than required by federal law, and (5) the trial court incorrectly calculated the amount of the arrearage that was owed to the state.[10]

The first two issues for which review is sought are based on a claim that the plaintiff had a statutory right, provided by § 17-82b, to be informed of the condition for receiving benefits, rather than a claim that the state could not, consistent with federal law, require an assignment of all support amounts due her at the time she applied for benefits. The third issue is based on the plaintiff's claim that even if the state would otherwise have a valid assignment, it was estopped from asserting it, and the fourth on a claim that the Connecticut legislature could grant an applicant an absolute right to conspicuous notice and to an explanation of the assignment, even if such notice and explanation is not required by federal law.

The trial court's conclusions, that the plaintiff's assignment of all her rights to support, including the defendant's child support arrearages, occurred by operation of law, and that the notice provisions of § 17-82b are directory rather than mandatory, are legal conclusions and are, therefore, subject to our plenary review. *State* v. *Torres*, 230 Conn. 372, 379, 645 A.2d 529 (1994). "Because interpretation of a statute presents a question of law, we decide the question independently of the [trial] court's decision." *In re Paternity of Lachelle A.C.*, 180 Wis. 2d 708, 713, 510 N.W.2d 718 (1993).

---

[10] The state agrees that the calculation was incorrect and makes no claim to the $445 that was owed by the defendant to the plaintiff for a time period after the plaintiff's AFDC benefits had terminated. We, therefore, do not address this issue.

## I

### VALIDITY OF ASSIGNMENT

The plaintiff's brief makes it clear that she agrees that Title IV of the Social Security Act, 42 U.S.C. § 602 (a) (26), requires an applicant to assign to the state any rights for child support that she had at the time she executed the assignment, which had accrued by then, and that the state was entitled to properly assigned arrearages if the arrearage amounts did not exceed the total amount of assistance paid to the recipient. The plaintiff's argument, however, is that General Statutes (Rev. to 1993) § 17-82b (now § 17b-77), the implementing statute in Connecticut, requires that its provisions as to notice be strictly followed in order for an assignment to be valid. If the notice is not conspicuously placed on the application and explained, the plaintiff claims that the assignment is void even if it arose by operation of law. We agree with the trial court that because the state must require the assignment of any and all support rights as a prerequisite to the receipt of AFDC benefits in order to be in compliance with federal regulations, the assignment takes effect by the operation of law by virtue of the application for AFDC benefits.

Title IV of the Social Security Act, 42 U.S.C. § 602 (a), outlines the requirements for states to participate in child support enforcement and family aid programs and imposes specific requirements on states in their implementation of the federal laws and regulations. Among these is the requirement that a state's plan for aid and services to needy families "must . . . (26) provide that, as a condition of eligibility for aid, each applicant or recipient will be required—(A) to assign to the state *any* rights to support from any other person such applicant may have (i) in his own behalf or in behalf of any

other family member for whom the applicant is apply-
ing for or receiving aid, and (ii) *which have accrued at
the time* such assignment is executed . . . ." (Empha-
sis added.) 42 U.S.C. § 602 (a).

The implementing regulations allow the states the
option of effecting an applicant's assignment of sup-
port rights either by operation of law or by execution
of an assignment agreement. A state plan for child sup-
port must provide that "[a]s a condition of eligibility
for assistance, each applicant for or recipient of AFDC
shall assign to the state any right to support from any
other person as such applicant or recipient may have";
45 C.F.R. § 232.11 (a) (1); or that "[a]n assignment by
operation of state law which is substantially identical
to the requirements of paragraph (a) (1) may be utilized
in lieu of the assignment described in that paragraph."
45 C.F.R. § 232.11 (b).

Federal regulations further provide that AFDC appli-
cants must be informed about their rights and obliga-
tions: "Applicants shall be informed about the eligibility
requirements and their rights and obligations under
that program. Under this requirement individuals are
given information in written form, and orally as appro-
priate, about coverage, conditions of eligibility, scope
of the program, and related services available, and the
rights and responsibilities of applicants for and recipi-
ents of assistance. . . ." 45 C.F.R. § 206.10 (a) (2) (i).
The regulations also state that upon discontinuance of
AFDC benefits, the assignment automatically ter-
minates "except with respect to the amount of any
unpaid support obligation that has accrued under such
assignment up to the amount of assistance paid." 45
C.F.R. § 302.51 (f); see also 42 U.S.C. § 657 (c).

States must pass their own enabling legislation to
effect this federal scheme. In order to obtain match-
ing federal funds, a state must operate its child sup-

port program in conformity with the Social Security Act. *State ex rel. Southwell* v. *Chamberland*, 361 N.W.2d 814, 818 (Minn. 1985); see also *Lavertue* v. *Niman*, 196 Conn. 403, 406 n.5, 493 A.2d 213 (1985). General Statutes § 17-82b provides that "[b]y such application [for AFDC benefits], the applicant shall assign to the commissioner the right of support, present, past and future . . . ." The statute also states that notice of assignment should "be conspicuously placed on said application and shall be explained to the applicant at the time of application." Committee deliberations on Public Acts 1980, No. 80-55, the act that added the language "by such application" and the notice provision, indicate that the purpose of the bill was to make it clear that the assignment arises by operation of state law upon the completion of an application for AFDC benefits, so that individual assignments from each AFDC recipient would not be necessary. Conn. Joint Standing Committee Hearings, Human Services, Pt. 1, 1980 Sess., pp. 27–35. The legislative history is devoid of the legislative purpose for the notice provision.[11] The stated purpose of the amendment was to "eliminate the requirement of individual assignment of rights to support." Raised Committee Bill No. 5120 (Feb. 1980), p. 2.

This court has, in another context, noted that "an assignment of support rights [becomes] effective upon operation of state law when the [applicant] sign[s] her application for public assistance." *Sierra* v. *Lozada*, 31 Conn. App. 114, 117, 623 A.2d 1045 (1993). Other cases involving General Statutes (Rev. to 1993) § 17-82b (now § 17b-77) have assumed, without explicitly stating, that the statute provides for assignment of support payments to the state by operation of law. " 'If the

[11] Bruce Morrison, then executive director of the New Haven legal assistance association, commented at the committee hearing that due process questions might be raised if the assignment arose by operation of law, without notice to the applicant. Conn. Joint Standing Committee Hearings, supra, p. 34.

paternity action [under § 46b-160 (a)] is successful and results in an award of child support, the moneys so awarded are paid directly to the state because the mother of a child on public assistance must assign her rights of support to the state.' " *Durso* v. *Misiorek,* 200 Conn. 656, 661, 512 A.2d 917 (1986); *DiMauro* v. *Natalino,* 11 Conn. App. 548, 549 n.1, 528 A.2d 851 (1987). These cases are different from those arising pursuant to General Statutes (Rev. to 1993) § 17-83e (now § 17b-93),[12] which does not give the state an automatic assignment of proceeds due to the beneficiary by a third party, but instead requires a separate action to enforce the state's right to reimbursement. *Thibeault* v. *White,* 168 Conn. 112, 117, 358 A.2d 358 (1975); see also *Danbury Savings & Loan Assn.* v. *Delaney,* 207 Conn. 743, 753, 542 A.2d 1153 (1988), cert. denied sub nom. *Heintz* v. *United States,* 488 U.S. 1004, 109 S. Ct. 783, 102 L. Ed. 2d 774 (1989).

The legislative history of § 17-82b clearly indicates an intention to have the assignment arise by operation of law upon completion of the application and to eradicate the need for each applicant to sign a separate agreement. The question we must decide, however, is whether the notice portion of the statute prevents the assignment from occurring if notice is not given in exact accordance with the statute. Phrased differently, the question is whether any notice can be statutorily

[12] General Statutes (Rev. to 1993) § 17-83e (a) (now § 17b-93) provides in pertinent part that "the parents of an [AFDC] beneficiary shall be liable to repay . . . to the state the full amount of any such aid paid to or in behalf of . . . his child or children. The state of Connecticut shall have a lien against property of any kind or interest in any property, estate or claim of any kind of the parents of an [AFDC] beneficiary, in addition and not in substitution of its claim, for amounts owing under any order for support of any court or any family support magistrate, including any arrearage under such order, provided household goods and other personal property identified in section 52-352b and real property pursuant to section 17-82c, as long as such property is used as a home for the beneficiary, shall be exempt from such lien."

mandated if the assignment occurs by operation of law. This issue is one of first impression in Connecticut. There is also a sparsity of case law in other jurisdictions, and neither we nor the parties found any case in any jurisdiction directly on point.[13]

"Operation of law is a generic term or phrase commonly used to express the manner in which rights (and/or liabilities) attach to a person by the mere application to the particular transaction of the established rules of law, without the act or cooperation of that person." (Internal quotation marks omitted.) *All Brand Importers, Inc.* v. *Dept. of Liquor Control*, 213 Conn. 184, 201, 567 A.2d 1156 (1989).

The legislature, thus, may enact legislation that causes an involuntary change in the position of litigants, such as providing for the effects of a merger or consolidation of stock corporations; id., 201; or for deeming the attorney general a party to a paternity proceeding even though he or she does not appear or participate in court proceedings. *Durso* v. *Misiorek*, supra, 200 Conn. 663. This is so because the legislature may determine by operation of the statute itself that certain liabilities or rights will attach upon the occurrence of certain events. The change is effected

---

[13] The parties cited related cases, but none were applicable. For example, the United States Bankruptcy Court, in the district of Connecticut, has held an assignment of support benefits under § 17-82b invalid because there was no written *application* for AFDC benefits. *In re Green*, 36 B.R. 398, 400 (1984). That case, however, is not applicable to the present case because the bankruptcy court limited its holding—*"in the context of [bankruptcy] litigation*, there can be no assignment in Connecticut, as required by § 602 (a) (26) of the Social Security Act . . . in the absence of a written application for assistance" (emphasis added)—and because it relates to the absence of an *application*. Id. Without an application, there cannot, of course, be an assignment by operation of law. The case of *Nelson* v. *Adult & Family Services*, 42 Or. App. 865, 601 P.2d 899 (1979), is also not applicable because it involves an assignment agreement, rather than an application that provides for an assignment by operation of state law.

automatically without any voluntary action of the persons or entities affected. Id.

Changes in the rights of parties that can occur by operation of the passage of laws, however, are fettered by both the federal and state constitutions.[14] Substantive and procedural due process rights cannot be trampled in the name of operation of law.

The guarantee of substantive due process requires that a law be reasonable, rather than arbitrary or capricious, and that its operation has a real and substantial relation to the object to be obtained. *All Brand Importers, Inc.* v. *Dept. of Liquor Control,* supra, 213 Conn. 205. Here, the purpose of the law requiring the assignment to the state of the support due is to conform to federal law, and is, therefore, rational, with a substantial connection between the purpose and the effect of the law.

The guarantee of procedural due process requires that persons whose rights are to be affected have a right to notice and an opportunity to be heard at a meaningful time and in a meaningful manner. Id., 208. "Procedural due process emphasizes the right to participate in decision-making—a right to be heard, rather than a right to a particular outcome." *New England Savings Bank* v. *Lopez,* 227 Conn. 270, 282, 630 A.2d 1010 (1993). Moreover, "due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey* v. *Brewer,*

---

[14] While the plaintiff refers only to the Connecticut constitution in her brief, the legal argument she presents is grounded in United States Supreme Court cases. Because both the fourteenth amendment of the United States constitution and article first, § 8, of the Connecticut constitution contain the same prohibition against the deprivation of "life, liberty, or property, without the due process of law," Connecticut courts give the same effect to both clauses. *Lee* v. *Board of Education,* 181 Conn. 69, 71, 72, 434 A.2d 333 (1980). Our analysis, therefore, encompasses both provisions.

408 U.S. 471, 481, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972); *Lee* v. *Board of Education,* supra, 181 Conn. 73. Finally, due process must be evaluated in context. *Cassella* v. *Civil Service Commission,* 4 Conn. App. 359, 372, 494 A.2d 909 (1985), aff'd, 202 Conn. 28, 519 A.2d 67 (1987). "Public assistance is not an outright gift which the recipient has a right to retain free and clear of any obligation of reimbursement. The benefit is burdened with the obligation to reimburse . . . ." *Commissioner of Finance & Control* v. *Whitfield,* 35 Conn. Sup. 622, 624, 403 A.2d 709 (1978).

The thrust of the plaintiff's argument that she was denied due process is a claim of denial of procedural due process. The procedural due process required depends on the particular situation. "[R]esolution of the issue whether the administrative procedures provided . . . are constitutionally sufficient requires analysis of the governmental and private interests that are affected." *Mathews* v. *Eldridge,* 424 U.S. 319, 334, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). There are three factors involved in that analysis, which are: whether the plaintiff was deprived of fundamental fairness by the alleged failure of the state to comply with the notice provisions of General Statutes (Rev. to 1993) § 17-82b, the extent of the governmental interest, including its financial interest, as well as administrative burdens, and the risk that the procedure used will deprive the plaintiff of a right. Id., 335; *Barnes* v. *Healey,* 980 F.2d 572, 577 (9th Cir. 1992); *Lavertue* v. *Niman,* supra, 196 Conn. 407–408. Here, the plaintiff has a financial interest in the retention of the defendant's payments, while at the same time receiving the benefit of a reduction in the amount of moneys she would otherwise have to repay the state for the dollar amount of AFDC payments previously made. The state has a financial interest in being reimbursed for support previously paid, and an interest in obtaining federal funds, which it cannot

receive without compliance with federal law. In addition, "[t]he legislature and the courts recognize that public assistance grants to those in need are a worthy necessity. No less necessary is the availability of funds to these programs and it is for this purpose that the legislature has enacted such provisions as those under consideration. . . . In view of the severe shortage of public assistance funds and the ever mounting demands on them, there is certainly a bona fide governmental interest in recouping such funds from persons who subsequently receive funds from other sources." (Citations omitted; internal quotation marks omitted.) *Thibeault* v. *White,* supra, 168 Conn. 118.

A similar issue has been addressed by the United States Supreme Court, which held that: "It would be quite strange . . . if, by virtue of an offer to provide benefits to needy families through the entirely voluntary AFDC program, Congress or the States were deemed to have taken . . . property. [The required assignment of support rights] does not even arguably take anyone's property." *Bowen* v. *Gilliard,* 483 U.S. 587, 605, 107 S. Ct. 3008, 97 L. Ed. 2d 485 (1987). The plaintiff, as the custodial parent, did not have to apply for the AFDC benefits, and had no vested rights in the receipt of AFDC benefits. The assignment of support payments to the state is, therefore, not a taking of private property. Id.

In order to be entitled to a notice and hearing, a person must have suffered, by state action, a loss of either a property or a liberty interest. *All Brand Importers, Inc.* v. *Dept. of Liquor Control,* supra, 213 Conn. 209. Due process requires that before the government can deprive a person of life, liberty, or property, the thoroughness of the procedure through which the deprivation is effected must be balanced against the gravity of the potential loss and the interests at stake, and the procedure involved must be appropriate to the nature

of the interest at stake. *Mullane* v. *Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313–14, 70 S. Ct. 652, 94 L. Ed. 865 (1950). The federal government "calls the shots" as to what is necessary to administer AFDC and has control over what the state legislation may require. The plaintiff has no cognizable federal due process right to require that her assignment be separate and individual, rather than by operation of law. See *All Brand Importers, Inc.* v. *Dept. of Liquor Control,* supra, 209–11.

Connecticut chose to provide for an assignment by operation of law rather than by execution of a separate assignment for each individual AFDC beneficiary. The recipient is, therefore, " 'deemed to have made an assignment to the State . . . of the right to any child support owed . . . up to the amount of public assistance paid.' " *State ex rel. Crews* v. *Parker,* 319 N.C. 354, 354 S.E.2d 501 (1987). A state is under no "duty to give persons subject to the state and federal statutes and regulations direct notice of their content and application . . . ." *Iverson* v. *Schulte,* 367 N.W.2d 570, 572 (Minn. App. 1985).

The question, however, is not solely whether a duty of notice of the assignment by operation of law was required, but whether an otherwise valid assignment is negated if a particular kind of notice as provided by the same statute is not given. The answer to this question involves an interpretation of whether the word "shall" in General Statutes (Rev. to 1993) § 17-82b is mandatory or directory.

The general rule is that the word "shall" is mandatory, not directory. *Jones* v. *Civil Service Commission,* 175 Conn. 504, 509–10, 400 A.2d 721 (1978). The fact that a provision uses the word "shall" does not, however, always indicate that the clause is mandatory. *Yanni* v. *DelPonte,* 31 Conn. App. 350, 353, 624 A.2d

1175 (1993). Moreover, statutes must be construed so as not to thwart their intended purposes. *Narel* v. *Liburdi*, 185 Conn. 562, 571, 441 A.2d 177 (1981), cert. denied, 456 U.S. 928, 102 S. Ct. 1974, 72 L. Ed. 2d 443 (1982). The result should be a rational and sensible one that bears directly on the legislative objective. *Peck* v. *Jacquemin*, 196 Conn. 53, 66, 491 A.2d 1043 (1985).

The basic test for whether a particular provision is mandatory is whether the mode of action relates to a matter of substance or convenience. *Tramontano* v. *Dilieto*, 192 Conn. 426, 472 A.2d 768 (1984); *Yanni* v. *DelPonte*, supra, 31 Conn. App. 354. Language is deemed to be mandatory when the mode of action is of the essence of the purpose to be accomplished by the statute. *LeConche* v. *Elligers*, 215 Conn. 701, 710, 579 A.2d 1 (1990). Language is deemed to be directory, on the other hand, if it prescribes what shall be done but the purpose of the statute is such that the intent of the legislature is not to invalidate the statute if the party fails to comply, such as where the language is written in affirmative terms containing no penalty for noncompliance, or where the language purports to establish procedure. *Ghent* v. *Planning Commission*, 219 Conn. 511, 516 n.4, 594 A.2d 5 (1991); *Caron* v. *Inland Wetlands & Watercourses Commission*, 25 Conn. App. 61, 66, 592 A.2d 964 (1991), aff'd, 222 Conn. 269, 610 A.2d 584 (1992); see also *Fidelity Trust Co.* v. *BVD Associates*, 196 Conn. 270, 278, 492 A.2d 180 (1985). To determine whether a particular provision is mandatory or directory, the court must examine the statute's language, the legislative history, and the statutory context. *Engle* v. *Personnel Appeal Board*, 175 Conn. 127, 129–30, 394 A.2d 731 (1978).

For example, in *Ghent* v. *Planning Commission*, supra, 219 Conn. 515, our Supreme Court held that the absence of a transcript was not fatal to subject matter

jurisdiction over the appeal because the requirement of a transcript was directory in nature, despite the fact that the applicable statute, General Statutes § 8-8 (c), used the word "shall." The court held that the language established procedure, and did not contain a penalty for noncompliance. Id. Similarly, *LeConche* v. *Elligers*, supra, 215 Conn. 701, dealt with the issue of whether the absence of a good faith certificate from a medical malpractice statute deprived the court of subject matter jurisdiction. The court held that the purpose of the applicable statute, General Statutes (Rev. to 1987) § 52-190a, was not compromised by the failure to supply the certificate. Id.

Here, it would defeat the purpose of § 17-82b if we were to construe the "shall" in that statute to be mandatory rather than directory. The purpose of the statute is to effect the assignment of the AFDC applicants' right to support by operation of law. Although the legislature in 1980 added the language providing for conspicuous placement of notice of the assignment of support rights and explanation of the assignment, that language was not the primary reason for the legislative act. Finally, § 17-82b contains no penalty for noncompliance. See *Caron* v. *Inland Wetlands & Watercourses Commission*, supra, 25 Conn. App. 61.

We conclude that the notice provisions are directory and that failure to follow them precisely does not invalidate the assignment.[15] The plaintiff was not deprived of either substantive or procedural due process.

## II

### Estoppel

The plaintiff also argues that even if the assignment did arise by operation of law, and even if there are no

---

[15] We have noted that the plaintiff had notice of the assignment. We need not, in our plenary review, reach the issue of whether the trial court improp-

due process problems with that assignment, the state is estopped from claiming the arrearage because the caseworker failed to make it clear that past due support payments were included in the assignment, and because, on one occasion in the past, the plaintiff had been allowed to keep a lump sum payment from the defendant. We disagree.

Estoppel generally may not be invoked against the government or a public agency functioning in its governmental capacity. The exception to this rule is when "the party against whom estoppel is claimed [does] something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and the other party . . . change[s] its position in reliance on those facts . . . . [E]stoppel against a public agency is limited and may be invoked: (1) only with great caution; (2) only when the action in question has been induced by an agent having authority in such matters; and (3) only when special circumstances make it highly inequitable or oppressive not to estop the agency." (Citations omitted; internal quotation marks omitted.) *Kimberly-Clark Corp.* v. *Dubno*, 204 Conn. 137, 148, 527 A.2d 679 (1987).

The facts of this case do not support the plaintiff's argument that the state is estopped from claiming past due arrearages as part of the plaintiff's assignment. First, the state did not induce her to apply for AFDC benefits. Second, she has shown no special circumstances that would make it highly inequitable or oppressive not to estop the state from collecting the arrearages. She claims that special circumstances exist in that she will lose a substantial arrearage and that she has encountered problems with the office of support enforcement since the trial court's ruling. The

erly determined that the notice was inconspicuous because we have concluded that the notice provisions of the statute are directory.

plaintiff assigned all of her rights to support at the time she applied for AFDC, and cannot claim that she will lose anything. Further, she does not detail in her brief nor is there anything in the record to indicate precisely what problems she has encountered with the office of support enforcement. Blanket statements do not constitute special circumstances for purposes of estoppel. Moreover, even if the plaintiff had demonstrated special circumstances, and although she was at one time misinformed that she could keep a lump sum payment of a past arrearage,[16] the fact remains that she was not induced to apply for benefits. The principles of estoppel do not apply here.

## III

### THE STATE MAY ENACT LEGISLATION PROVIDING BROADER PROTECTION TO ITS CITIZENS THAN THAT PROVIDED BY FEDERAL LAW

In raising this issue, the plaintiff appears to be arguing that because the federal regulations allow state legislatures to effect the assignment of support rights either in writing or by operation of law, and because Connecticut has chosen to effect the assignment by law but also makes a provision for notice in its implementing statute, § 17-82b, this court must construe § 17-82b as requiring an oral explanation of the assignment to AFDC applicants and conspicuous notice of the assignment. In making this argument, the plaintiff reiterates many of the arguments raised elsewhere in her brief.

We disagree, for the reasons discussed in part I, that the notice provisions of General Statutes (Rev. to 1993)

---

[16] On a different occasion, however, the plaintiff notified the state that she had received a lump sum payment for past due support and she repaid that money to the state. It is noted that successful actions brought pursuant to General Statutes § 46b-160 require the payment of support directly to the state. *Durso* v. *Misiorek,* supra, 200 Conn. 661. There is no explanation in the record of the present case as to why arrearages were not paid directly to the state.

§ 17-82b (now § 17b-77) are mandatory. The state may give greater rights to its citizens, pursuant to its constitution than would be granted under the federal constitution. That proposition does not apply, however, here. Our interpretation of General Statutes (Rev. to 1993) § 17-82b (now § 17b-77), namely, that its notice provisions are directory, does not deprive the plaintiff of a constitutional right, and accomplishes its purposes.

The judgment is reversed only as to the calculation of the award and the case is remanded with direction to render judgment for the state in the amount of $7782.56.

In this opinion the other judges concurred.