STATE of Wyoming, DEPARTMENT OF
FAMILY SERVICES, Appellant
(Petitioner/Respondent),

v.

Randy Jay PETERSON, Appellee
(Defendant/Petitioner).

No. 97–202.

Supreme Court of Wyoming.

May 8, 1998.

William U. Hill, Attorney General; Michael L. Hubbard, Deputy Attorney General; and Donna A. Murray, Special Assistant Attorney General, for Appellant (Petitioner/Respondent).

Robert O. Anderson, Riverton, for Appellee (Defendant/Petitioner).

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN and LEHMAN, JJ.

MACY, Justice.

Appellant State of Wyoming, Department of Family Services (the State) appeals from the order which the district court entered in favor of Appellee Randy Peterson (the father). The district court found that the oral modification agreement entered into fourteen years earlier by the father and the custodial grandparent to lower the father's child support obligations was valid even though the custodial grandparent was receiving public assistance.

We reverse and remand.

## ISSUE

The State presents a single issue for our review:

Did the district court err when it determined that the Department of Family Services was bound by an oral modification of child support between a non-custodial parent and the custodial grandparent when the custodial grandparent was the recipient of public assistance?

## FACTS

The father and Michelle Peterson married each other on April 20, 1977. Two children were born during the marriage. Irreconcilable differences arose, and the parties were granted a divorce on May 11, 1982. The divorce decree awarded custody of the children to the maternal grandmother and ordered the father to pay support in the amount of $380 per month. Without ratification by the court, and at about the time when the divorce decree was entered, the grandmother and the father entered into an oral modification agreement to reduce the father's child support obligations to $250 per month. The father began making the monthly $250 payments before the divorce decree was entered.

The grandmother began receiving Aid to Families with Dependent Children (AFDC) benefits in January of 1987. In exchange for the state aid, the grandmother assigned her rights to child support, whether accrued, present, or future, to the State of Wyoming. In the assignment notice, the State requested copies of the divorce decree and the payment record. The State subsequently sent a delinquency notice to the father on July 16, 1992, informing him that he was delinquent for the difference between the $380 per month that he was ordered to pay and the $250 per month that he had been paying. The delinquency notice also informed the father that an income withholding order would be entered. The father filed a petition to stay service of the withholding order. On June 10, 1996, the father petitioned the district court to ratify the oral modification that he and the grandmother had agreed to fourteen years earlier.

The district court ratified the modification agreement between the father and the grandmother as of June 1, 1982. It found that the assignment of rights to the State did

not go into effect until the grandmother actually began receiving state aid. The State moved to have the order set aside because it was not a party to the action and because the judgment had been entered without proper service being given. The district court vacated the order and made the State a party to the proceeding so that it could respond to the father's pleadings.

After a hearing on the matter, the district court entered a second order which stated that the modification agreement was enforceable and that, under equitable principles, the modification agreement was in effect until the State filed its delinquency notice. The district court found that the father had paid regularly in accordance with the oral agreement. It then held that arrearages began to accrue when the State filed its delinquency notice because the father was "on notice [at that time] that this oral modification with [the grandmother] now involved a third party and was disputed." The State appeals to this Court.

## DISCUSSION

The State claims that the district court erred by ratifying the father and grandmother's oral agreement to reduce the child support obligations because the agreement interfered with the reimbursement of state benefits which had been paid on the children's behalf. The father responds that the State was only entitled to the child support payments provided for by the modification agreement because the agreement had been entered into long before the grandmother began collecting state aid.

AFDC is a cooperative federal and state public assistance program in which the federal government provides matching funds to the participating states to provide assistance to the needy dependent child and to the relative caretaker. In order to qualify for matching funds, a state must have in effect a plan approved by the Social Security Act, and must operate its child support program in conformity with that plan.

*State ex rel. Southwell v. Chamberland*, 361 N.W.2d 814, 818 (Minn.1985). Subchapter IV of the Social Security Act outlines the plan that each state must implement in order to receive grants from the federal government for aid to needy families with children. Under that plan, recipients must assign their rights to support to the State:

A State plan for aid and services to needy families with children must—

. . .

(26) provide that, as a condition of eligibility for aid, each applicant or recipient will be required—

(A) to assign the State any rights to support from any other person such applicant may have (i) in his own behalf or in behalf of any other family member for whom the applicant is applying for or receiving aid, and (ii) which have accrued at the time such assignment is executed[.]

42 U.S.C. § 602(a)(26)(A) (1988).

In order for Wyoming to be eligible for federal AFDC money, the legislature enacted the Child Support Enforcement Act, Wyo. Stat. §§ 20–6–101 to –402 (1994), a statutory scheme designed to aid the State in enforcing child support obligations. The relevant statutes which were in effect when this controversy presented itself are set out below.

Wyo. Stat. § 20–6–103(a) (1997) requires the State to establish a child support enforcement program:

(a) The department shall establish a program of enforcement services in cooperation with the federal government pursuant to Title IV–D and other applicable federal regulations, to aid in enforcing support obligations owed by obligors to their children, in locating obligors, in establishing parentage and in obtaining child support.

Wyo. Stat. § 20–6–105(a)(i) (1994) (amended 1997) required, as a condition of eligibility for state aid, the applicants to assign their rights to child support payments to the division which implemented the program:

(a) Child support enforcement services shall be provided to:

(i) Those recipients of aid to families with dependent children who, as a condition of eligibility under federal law, are

required to assign their rights to support to, and cooperate with, the division in the establishment of parentage and the enforcement of support obligations;
. . .

Wyo. Stat. § 20–6–106 (1994) (amended 1995 & 1997) provided in relevant part that, in addition to the rights to support being assigned by operation of law, the State was subrogated as a recipient entitled to any debt created by the court ordered child support:

(a) By signing an application for, or being a recipient of, aid to families with dependent children, a support obligee assigns to the department, by operation of law, all rights that person and all other members of the household have to child and spousal support, whether accrued, present or future, and their right to medical support.

(b) The department shall have a cause of action against an obligor with respect to any child on behalf of whom public assistance has been paid to recover support due to that child, or to establish parentage for the dependent child if born out of wedlock. The action may be brought and maintained either in the department's own name or in the name of the obligee or obligor.

. . . .

(d) For purposes of prosecuting any civil action under this act or other applicable state statutes relating to the enforcement of child support obligations, the department is the assignee of support rights to the extent of any public assistance provided to an obligee. No act of the obligee shall prejudice these rights of the department or the dependent child.

(e) No agreement between any obligee and any obligor purporting to relieve the obligor of any duty of support or to settle past, present or future support or obligations either as settlement or prepayment will reduce or terminate any rights of the department to recover from the obligor for support provided by the department unless the department has consented to the agreement in writing or unless it has been approved by the court.

. . . .

(g) If a court orders support to be paid by an obligor, the department shall be subrogated to the debt created by the order. This subrogation interest shall apply to all orders of support including temporary spouse support orders, family maintenance and alimony orders to the extent of the amounts paid by the department in public assistance to or for the benefit of a dependent child and the amount of medical support provided by or through another division of the department or the department of health or the department of family services.

██ We agree with the way other jurisdictions have handled similar situations. The Connecticut Appellate Court has addressed the question of whether a custodial parent assigns his/her rights to past, current, and future support payments in exchange for receiving public assistance. *Langan v. Weeks,* 37 Conn.App. 105, 655 A.2d 771 (1995). In *Langan,* the appellate court held that the mother assigned all her rights to support obligations, including past due arrearages, when she applied for the state aid. 37 Conn. App. 105, 655 A.2d at 782. The Utah Supreme Court held in *Gulley v. Gulley,* 570 P.2d 127, 128–29 (Utah 1977), that, even though the parents had entered into an agreement two years before the mother applied for state aid to extinguish all child support obligations in exchange for a lump sum, the father was obligated to reimburse the state for the public aid which had been given for his children's benefit. In *Martinez v. Martinez,* 98 N.M. 535, 650 P.2d 819, 823 (1982), the New Mexico Supreme Court held that a father could not be relieved of his duty to support his children while the children were receiving AFDC benefits. The New Mexico court opined:

Public policy dictates that the primary obligation for support and care of a child is by those who bring a child into the world rather than on the taxpayers of the state. Therefore, parents have a duty to support their children and cannot rid themselves of it by transferring the duty to someone else.

98 N.M. 535, 650 P.2d at 823.

██ The State also asserts that the retrospective ratification of the oral modification

agreement between the grandmother and the father was improper because the agreement had not been timely submitted to the district court for ratification.

While agreements and stipulations between the divorced parties are presumed fair and favored by the courts, such agreements must be promptly submitted to the district court having jurisdiction to revise the original decree. The parties may not independently revise the decree, only the district court can do that, when warranted.

*McKenzie v. Shepard,* 814 P.2d 701, 702 (Wyo.1991) (citations omitted). Wyo. Stat. § 20–2–113(a)(i) (1997) provides in pertinent part:

(a) ... An order for child support is not subject to retroactive modification except:

(i) Upon agreement of the parties; or

(ii) The order may be modified with respect to any period during which a petition for modification is pending, but only from the date notice of that petition was given to the obligee, if the obligor is the petitioner, or to the obligor, if the obligee is the petitioner.

The father argues that this was not a retroactive modification but was a ratification of an oral modification made when support became due and that a support obligation can be modified by agreement of the parties pursuant to § 20–2–113(a)(i).

We do not agree with the distinction that the father attempts to make. This Court has held that district courts do not have the authority to retrospectively modify divorce decrees with respect to child custody obligations.

If a court could retrospectively modify the rights of a party under a decree incorporating a settlement agreement, the agreement becomes virtually worthless. This development would violate well-established Wyoming law favoring settlement agreements. Furthermore, allowing retrospective modifications of divorce decrees may encourage default. A party might decide to stop payment and allow arrearages to accrue to a substantial amount, with the hope and anticipation that the court will cancel the accrued payments owed to the receiving party. We prefer a rule which encourages a party to seek modification of a divorce decree at the moment his financial situation changes.

*Parry v. Parry,* 766 P.2d 1168, 1170 (Wyo. 1989) (citations omitted). *See also McKenzie,* 814 P.2d at 702. Furthermore, the State, which was one of the parties, did not agree to a retrospective ratification of the modification agreement.

Finally, the father suggests that the State should be estopped from challenging the oral modification agreement because it waited approximately five years before complaining about it. We have previously addressed claims of equitable estoppel against state agencies. In *Seaman v. Big Horn Canal Association,* 29 Wyo. 391, 398, 213 P. 938 (1923), we stated:

[O]ne who by his acts or representations intentionally or through culpable negligence induces another to believe certain facts to exist, and the latter, not knowing the facts, acts on such belief to his substantial prejudice, the former is, in equity, estopped to deny the existence of such fact.

In more recent cases, we have said that equitable estoppel requires some misrepresentation and is generally applied to prevent fraud, either constructive or actual. *Griess v. Office of the Attorney General, Division of Criminal Investigation,* 932 P.2d 734, 739 (Wyo.1997); *B & W Glass, Inc. v. Weather Shield Mfg., Inc.,* 829 P.2d 809, 813 (Wyo. 1992); *Squaw Mountain Cattle Company v. Bowen,* 804 P.2d 1292, 1297 (Wyo.1991). Equitable estoppel against a governmental agency requires even more egregious conduct.

Equitable estoppel should not be invoked against a government or public agency functioning in its governmental capacity, except in rare and unusual circumstances and may not be invoked where it would serve to defeat the effective operation of a policy adopted to protect the public.

*Big Piney Oil & Gas Company v. Wyoming Oil and Gas Conservation Commission,* 715 P.2d 557, 560 (Wyo.1986). *See also Griess,*

932 P.2d at 739. We have also stated the proposition in this way: Equitable estoppel "does not apply to governmental or sovereign functions, especially where it would defeat the public interest. [Furthermore,] the state may not be estopped for the unauthorized acts or errors of its officers or employees." *State Highway Commission of Wyoming v. Sheridan–Johnson Rural Electrification Association,* 784 P.2d 588, 592 (Wyo.1989) (citation omitted).

The father did not establish any of the special facts which might have entitled him to claim equitable estoppel. The record does not demonstrate that the State induced the father to believe that certain facts existed or that the father acted on that belief to his prejudice; nothing in the record shows misrepresentation or fraud, either actual or constructive; and no egregious conduct or any rare and unusual circumstance has been shown which would justify an exception to the rule. Furthermore, equitable estoppel, if it were applied in this instance, would defeat the application of a policy which has been adopted to protect the public.

## CONCLUSION

The district court erred when it retroactively ratified the father and the grandmother's oral modification agreement that they had entered into fourteen years earlier. The State is entitled to be reimbursed, from the arrearages that have accrued since the 1982 divorce decree was entered, the amount that it has paid in state aid for the children's benefit.

Reversed and remanded.